# DANIEL H. MURPHY

## *vs.*

# EDMUND J. WACHTER, President, et al.

*Election laws: registration; party affiliation; refusal to state—;
"declined." Code of Public General Laws, Article 33,
section 186: right to alter entry; supplemental
registration in Baltimore City.*

Where, under the provisions of the Code of Public General
Laws, Article 33, a prospective voter has himself entered "de-
clined" upon the registration books, he is not in the position
of a voter who can correctly be said to have "had his affiliation
registered" within the provisions of the Act denying such voter
to change his party affiliation within the time six months prior
to a primary election.                                    p. 567

The purpose of the Act was to prohibit voters, within six
months prior to their participation in a primary election, from
making a change in their party affiliation, previously made and
declared, for the purpose of such participation.          p. 567

So far as the right to take part in a primary election is con-
cerned, an unaffiliated voter is practically in the same situation
as one who is unregistered.                               p. 567

The term "supplemental," as applied in the City Charter
of Baltimore City, to the registration directed to be held in
April preceding the municipal elections in May, is to be re-
garded as one of the intermediate registrations, to which ap-
plies section 186 of Article 33, providing when a voter may
declare, change or recall his affiliation.                p. 568

At such supplemental registrations, a registered voter, who
has previously declined to affiliate with a political party, may
have the entry to that effect canceled, and may declare his party
affiliations, with the resulting right to vote in subsequent pri-
mary elections, without restrictions as to the time of their occur-
rence.                                                    p. 568

*Decided June 24th, 1915.*

Appeal from the Baltimore City Court. (GORTER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE. JJ.

*Augustus C. Binswanger,* for the appellant.

*Enos S. Stockbridge,* for the appellees.

URNER, J., delivered the opinion of the Court.

By section 186 of Article 33 of the Code of Public General Laws, relating to elections, it is provided, in part, as follows: "At every general registration held in Baltimore City, and in each and every county of the State, subsequent to April 11, 1910, there shall be provided in the registration books a distinct column headed 'party affiliations,' and the board of registers shall enter in this column the name of the political party, if any, to which the voter is inclined and with which the voter desires to have himself recorded as affiliated. It shall be the duty of the board of registry to explain to each voter that the statement of such party affiliation does not bind him to vote for the candidate of such party of any given election; also that he has the right to decline to state any party affiliations; but that no one who is not recorded upon the registry as affiliated with a particular political party will be qualified to vote at subsequent primary elections of said political party. Whenever a voter declines to state his party affiliation, the word 'declined' shall be written opposite his name under such column, so that there shall be written in such column opposite the name of every registered voter, either his party affiliations or the word 'declined.' And in all primary elections thereafter held, any person so registered as affiliated with a given political party shall have the right to vote the official ballot of that party and of no other; and at any intermediate registration subsequent to the close of the next general registration, such voter may appear before the board of registry, and, upon his identity being established to the satisfaction of the major-

ity of the board of registry, to make, alter or strike out any entry in the column headed 'party affiliations,' opposite his name in the registry; it shall be the duty of the board of registry to enter in the column headed 'remarks' the fact that such entry was made, altered or stricken out, and the date thereof." In section 182 of the same article there is a provision that "No person or voter after having had his affiliation registered shall be permitted to make any change in his party affiliation unless the same shall be made at least six months prior to the day of the primary election."

Under the provisions of another section of Article 33, a general registration of voters occurred in the City of Baltimore in September and October of the year 1914, and the appellant, who is a resident of the City, was duly registered on October 7th as a qualified voter at one of the regular sessions of the board of registry in the precinct of his domicile, but having declined to state his party affiliation, an entry indicating that fact was made in the appropriate column as directed by the statute. In addition to the provision we have quoted from, section 186 of Article 33 of the Code, it is therein provided that "Nominations for Mayor, Comptroller, President of the Second Branch City Council and members of the City* of Baltimore shall be made by direct vote of the respective political parties at primary elections to be held in all respects according to the aforegoing provisions (of the Code), applicable to primary elections in Baltimore City, except that the day for holding the same shall be the first Tuesday of April of the year in which the municipal elections in said City of Baltimore are to be held on a different day from the general election." The City Charter designates the Tuesday next after the first Monday of May as the day for the quadrennial municipal elections, one of which occurred in regular sequence on May 5th, 1915. Provision is made by the Charter, in its seventeenth section, that prior to every municipal election "there shall be on the first and second

*(Council?—REP.)

Mondays of April a supplemental registration of voters of Baltimore City, which registration shall be under the supervision of the Supervisors of Election and conducted in conformity with the provisions of the law then in force relating to the registration of voters. On each day of said registration the registers shall revise the list of registered voters made at their last regular sitting, by adding the names of those persons who are entitled to registration at that time, and striking from said registration lists the names of those persons who have died or become disqualified since the said last sitting, and the registration lists used at the preceding November election, after being revised as herein directed, shall be used at the municipal election in May."

On April 5, 1915, that being one of the days appointed by the Charter for supplemental registration, the appellant appeared before the board of registry for his precinct, and, after satisfying the board of his identity, requested that the entry opposite his name in the party affiliation column of the registration books be altered by the striking out of the word "declined" and the insertion of the word "Republican." This request was refused, and the present petition for a mandamus has resulted. The plaintiff's right to have the desired alteration made at the time proposed, was challenged by demurrer to his petition upon the ground that such action on the fifth of April would precede by only a day the municipal primary election on the sixth, and would therefore be contrary to the provision we have quoted from section 182 of the election law to the effect that no voter, after having once had his party affiliation registered, shall be permitted to make any change in his affiliation unless it shall be made at least six months prior to the day of the primary election. The demurrer was sustained and the petition for mandamus dismissed, and the plaintiff has appealed.

The controlling question, in our view of the case, is whether the plaintiff is to be regarded as a voter who has heretofore "had his affiliation registered," and is thus within the purview of the prohibition against any "change in his party

affiliation" within six months of the primary election at
which he proposes to vote. When he applied to be registered
in October, 1914, he had the right under the statute "to have
himself recorded as affiliated" with the political party to
which he was inclined, and he had the alternative privilege
of declining "to state his party affiliation." The plaintiff
availed himself of the latter right, and he was accordingly
noted in the proper column as "declined." The effect of
this entry, in view of the provisions we have quoted, was to
indicate the plaintiff's conclusion not to affiliate, for the time
being, and for primary election purposes, with any political
party. It seems clear, therefore, that he is not in the position
of a voter who can be correctly said to have "had his affilia-
tion registered."

The expressed object of the Act was to prohibit voters,
within six months prior to their participation in a primary
election, from making a change, for that purpose, in their
party affiliation previously and formally *declared*. There is
no reference in this prohibition to voters who had *declined*
to affiliate. The considerations of public policy upon which
the law would prevent the shifting of affiliated voters from
one party to another shortly before a primary election may
have been supposed by the Legislature to have no application
to the admission, for the first time to such elections, of voters
who had theretofore refrained from qualifying themselves,
under the statute, for that privilege. So far as the right to
take part in a primary election is concerned, the unaffiliated
voter would appear to be in practically the same situation as
one who is unregistered. A newly registered voter who
records his identification with a political party is not sub-
jected to the six months' limitation of time as to participa-
tion in the party's primary election, and the formerly "de-
clined" voter, who eventually concludes to affiliate, may have
been regarded as being equally entitled to exemption from
such a restriction. At all events, the law-making body has
manifested its intention to apply this provision to previously
registered voters who have once *declared* but subsequently

desire to *change* their party affiliation, and not to those who have *declined* to thus connect themselves with a political party, and we are not at liberty to bring this additional class of voters within the effect of the limitation by extending it beyond the plain meaning of the terms in which it has been defined.

While the term "supplemental" is applied by the City Charter to the registration directed to be held on the first and second Mondays of April preceding the municipal election in May, it is required to be entered upon the regular books of registry provided and used under the general election laws of the State, and is conducted by the same officials who serve at the registration of the City voters for all election purposes, and hence it is properly to be regarded as one of the intermediate registrations to which section 186 of Article 33 of the Code refers as an occasion when a voter may declare, change or recall his affiliation.

According to our construction of the existing statutes, a registered voter who has previously declined to affiliate with a political party is entitled to have the entry to that effect canceled, and to declare his party affiliation, at the supplemental registration to which we have referred, with the resulting right to vote in subsequent primary elections, without restriction as to the time of their occurrence. Our conclusion, therefore, is that the plaintiff's application to the Board of Registry to strike out the former entry of "declined," and to record the party affiliation he desired, should have been granted, and the writ of mandamus to enforce that right ought to have issued. Although the writ would now be nugatory with respect to the plaintiff's participation in the late municipal primary election, it may be of service in securing his rights in reference to the primary election to be held in September of the present year and other such events in the future.

There were other questions raised in the argument, but the view we have taken of the case renders their discussion unnecessary.

*Order reversed, with costs and case remanded.*