JAMES L. HENNEGAN, ET AL. *v.* MYER GEARTNER

[No. 165, October Term, 1945.]

552

*Decided, Per Curiam, April 12, 1946.*

*Opinion filed May 17, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*J. Edgar Harvey, Assistant Attorney General,* with whom were *William Curran, Attorney General,* and *T. Barton Harrington, Assistant Attorney General,* on the brief, for the appellants.

*H. Mortimer Kremer* for the appellee.

*Per Curiam:*

For reasons to be stated more at length in an opinion to be filed hereafter we conclude that Section 23 of Article 33 of the Code, as enacted by Chapter 934 of the Acts of Assembly of 1945, is valid and constitutional. It is therefore ordered by the Court of Appeals this 12th day of April, 1946, that the order appealed from in the above entitled case be and it is hereby reversed and the petition for mandamus is hereby dismissed with costs.

MARBURY, C. J., delivered the opinion of the Court.

This case is an appeal from an order passed in the Baltimore City Court directing the issuance of a writ of mandamus. The writ commands the Board of Supervisors of Elections of Baltimore City to permit the petitioner to change his registered party affiliation from Republican to Democrat. At the request of the Attorney General, representing the Board of Supervisors, appellant here, the case was advanced and heard on April 12, 1946. On the same day a *per curiam* order was filed, reversing the order of the lower court, and dismissing the petition for mandamus. The reasons for our conclusion are now given.

Petitioner, who is appellee here, is an army officer who was in the service over five years, during over two of which he was overseas in Europe and the Pacific. He is a duly registered and qualified voter in Baltimore City and is registered as a Republican. On February 11, 1946, he presentd himself at the office of the appellant, and requested that his affiliation be changed from Republican to Democrat. This request was refused and petitioner claims he was thereby deprived of his privilege of voting in the Democratic primary election, and of standing for office as a candidate for a Democratic nomination in such primary election, to be held in June, 1946. He claims that the action of the appellee was unconstitutional, a denial of due process, and of the privileges guaran-

teed by Article 23 of the Declaration of Rights of the Constitution of this State, and by the 14th Amendment to the Constitution of the United States, and a denial of his rights under Article 7 of the Declaration of Rights of this State. To this petition the Board of Supervisors of Elections, appellant here, answered, and a demurrer to the answer was sustained. The defense was that under Section 23 of Article 33 of the Annotated Code, as amended by Chapter 934 of the Acts of Assembly of 1945, a person may change his party affiliation at any time except within six months preceding a primary election, and Section 130A of Article 33, as amended by Chapter 934, provides that the primary election shall be held on June 24, 1946. Hence, appellee's application was within the excepted six months' period. The court below held that Section 23 was, as stated in his opinion, "without the constitutional ambit," and granted the writ.

The ground of complaint charged and upheld against Section 23, is that every citizen, by Article 7 of the Declaration of Rights, shall have the right of suffrage, if he has the constitutional qualifications. These qualifications are contained in Article 1, Section 1 of the Constitution, which provides that any citizen having them, shall be entitled to vote "at all elections hereafter to be held in this State." Petitioner claims that since he is denied the right to vote at an election, when other voters are permitted to do so, the Act creates an arbitrary and unreasonable discrimination, and he is therefore denied the equal protection of the law and has been improperly prevented from exercising his constitutional right of suffrage.

It must be borne in mind, in considering this question, that there were no official primary elections when the Constitution was adopted. When a primary election act was passed in 1904 for Allegany County, Acts 1904, p. 870, c. 508, the right of the Legislature was at once challenged. It was upheld by this Court in the case of *Kenneweg v. Allegany County Com'rs*, 102 Md. 119, 123, 62 A. 249, 250, and the Court, speaking through Judge McSherry,

said, "The General Assembly possesses all legislative power and authority, except in such instances and to such extent as the Constitutions of the state and of the United States have imposed limitations and restraints thereon. In this respect the Legislature differs from the Congress of the United States, which has, and can exercise, only such power as the Federal Constitution expressly or by necessary implication confers upon it. In the General Assembly plenary power to legislate is vested, unless restrained by the Constitution. In the Congress the power to legislate is not vested, unless confided by the Federal Constitution. In the state Constitution we look, not for the power of the General Assembly to adopt an enactment, but for a prohibition against its adoption. In the Federal Constitution we look, not for the prohibition, but for the delegated power to enact a measure. The General Assembly being, then, the depository of all legislative power, except when restrained by the organic law, it follows that it is clothed with full power to enact a primary election law, if there is no provision in the Constitution depriving it of that authority. There is no such provision to be found in the Constitution of the state. It is true that section 42 of Article 3 of the Constitution provides: 'The General Assembly shall pass laws for the preservation of the purity of elections'; but the power to enact a primary election law lies back of and beyond this provision and is not derived from it at all. The power to legislate in regard to elections— primary or general—if unrestrained by the Constitution itself is inherent in the General Assembly, and the provision just cited, instead of *conferring* the power, is a mandate to *execute* a power implicitly assumed to exist independently of the mandate. 'The General Assembly shall pass laws,' is a direction to bring into activity an antecedent and independent authority."

The Congress of the United States has also been held to have power over official primary elections in cases where Congressional candidates are nominated. *United States v. Classic,* 313 U. S. 299, 85 L. Ed. 1368.

As a result of these decisions, it appears quite clear that the Legislature has power to create and regulate primary elections, subject only to such prohibition as may be found in the State Constitution, and subject as to Congressional elections to any prohibitions in the Federal Constitution.

The question raised by the appellee can be best considered by an examination of the applicable provisions of our election law.

The "Elections" article of the Code, Article 33, was repealed and re-enacted in its entirety by Chapter 934 of the Acts of 1945. The new article, however, is not an entirely new law, but is a compilation or rearrangement of previously existing law with such amendments as the Legislature thought it advisable to make in order to produce a more compact and harmonious system. Section 23, as thus enacted, reads as follows, the inapplicable parts being omitted. "In the said City and counties, persons quaified to register, transfer, affiliate or change their party affiliation may register, transfer, or affiliate at the office of the Board of Supervisors of Elections at any time such office is open, except in Baltimore City thirty days preceding and ten days following a primary or special election and forty-five days preceding and fifteen days following a general election, and in the counties thirty days preceding and ten days following any election, primary, general, or special; and may change their party affiliation at said office, when open, except six months preceding and ten days following a primary election and in Baltimore City, forty-five days preceding and fifteen days following and in the counties thirty days preceding and ten days following, a general or special election." This part of the law is not new, but appears in the Annotated Code of 1939, Article 33, Section 54. It was first enacted by Chapter 77 of the Acts of 1937, which placed it in the section added to Article 33 and numbered 29M. Chapter 77 was the act providing for permanent registration in Baltimore City.

However, there is another applicable section which is much older. That is Section 47 of Article 33 as reenacted by Chapter 934 of the Acts of 1945. That section provides "No voter after having had his or her affiliation registered shall be permitted to make any change in such party affiliation unless the same shall be made at least six months prior to the day of the primary election." This provision has been in the statute law of the State since the enactment of Chapter 2 of the Acts of 1912, when it was placed at the end of Section 160E of Article 33. In the Code of 1939 it is Section 233 of Article 33. For 34 years, therefore, it has been a part of the established election law of the State.

In the primary election law of 1910, Chapter 741, p. 113, there were added certain new sections to Article 33, among them being Section 160 t. That section provides for the column in the Registration Books headed "Party Affiliation," and it is stated, "It shall be the duty of the board of registry to explain to each voter that the statement of such party affiliation does not bind him to vote for the candidate of such party of any given election; also that he has the right to decline to state any party affiliations; but that no one who is not recorded upon the registry as affiliated with a particular political party will be qualified to vote at subsequent primary elections of said political party." The Section then provides that in all primary elections, afterwards held, any persons registered as affiliated with a given political party shall have the right to vote the official ballot of that party and no other, but he is given the right, at any intermediate registration subsequent to the closing of the next general registration, to make, alter, or strike out any entry in the "Party Affiliations" column. These same provisions were continued from year to year, and were codified in the Annotated Code of 1939 as Section 239, Article 33. In the Act of 1945, Chapter 934, some of them were reenacted as Section 52 of Article 33. The prohibition against affiliated voters changing their affiliation within six months of the primary, has been before this Court

and has been impliedly approved in the case of *Murphy v. Wachter,* 126 Md. 563, 95 A. 201. In that case the question was whether a "declined" voter could affiliate within six months. And the Court said he could, because he was not changing his affiliation, but was, for the first time, identifying himself with a party. In that case the constitutional question was not raised. There are a number of other provisions in the election law which have some bearing on the question raised. Primaries are provided only for majority parties. Those belonging to minor parties must nominate their candidates by convention or petition (Article 33, Sections 32, 33, and 34). No individual may become an independent candidate at the general election who has been a candidate for nomination by a political party in a primary preceding the general election at which he desires to stand for office. Article 33, Section 34. No one can file as a candidate for a party unless he is affiliated with that party. Article 33, Section 49. An exception is made to this last rule for those seeking the office of judge.

All of the provisions above quoted and referred to indicate the intention of the Legislature to restrict voting at a primary to those who legally and properly belong to the party for which the primary is held. If this can be lawfully done, the permission to a comparatively small number of voters (new and declined) to join a party within six months of the primary, and to participate in the primary, could not invalidate a general provision designed to carry out a lawful intention. The right given them might even be upheld on the doctrine of *de minimis,* but it is not necessary to invoke this. The direct primary is a creature of the Legislature, designed for the purpose of permitting the members of a party to select their candidates under official supervision and control. According to its history and interpretation in this State, it is substituted for conventions or meetings of voters. Such conventions or meetings were always restricted to those belonging to the parties by whom they were held, and so the direct and official primary is so restricted.

The Legislature is not classifying voters. It is exercising its inherent power to safeguard elections, and is regulating elections as it is authorized by the Constitution. There is no fundamental right in any voter to participate in the primaries or conventions of parties other than the one to which he belongs. Neither Article 7 of the Declaration of Rights nor Section 1 of Article 1 of the Constitution have any such implication. New or "declined" voters do not belong to a party. They are given the right to choose one at any time. Until such choice is made, there is a clear distinction between their situation and that of those who have affiliated. The affiliated voter has already chosen his party under a law which provides that the result of his choice restricts him to one primary only. (Art. 33, Sec. 52.) What public policy may require as to him is not necessarily required as to those who have never affiliated.

A possible reason for such public policy is expressed in the California case of *Schostag v. Cator*, 151 Cal. 600, 91 P. 502, 503, where the Supreme Court of that State said that the law forbidding the changing of party affiliations after the closing of the previous registration, was "designed to prevent unscrupulous and mercenary electors from holding themselves free down to the day of election to vote with any party, upon any corrupt motive, for the purpose of influencing the nomination of its candidates for public office, while without any interest in their success, and perhaps with an interest in their defeat." See also *State v. Keith,* 37 Nev. 452, 142 P. 532. Whether the danger is in voters from an opposite party nominating a weak candidate whom they can then defeat at the general election, or whether it is in their possible desire to have the candidate of the opposite party one who believes as they do on some particular question, not connected with party, it is clearly to be feared only from the action of voters already affiliated. The Maryland electoral system is predicated historically upon the right of each party to nominate its own candidates. The Legislature is within its powers in passing

any reasonable provision, which it thinks will effectuate and carry out that system. It has put political proselytes on six months' probation. There is nothing unreasonable or arbitrary in the provision complained of. It does not have to be all embracing and cover all voters. There is no such constitutional requirement.

It is true that other States have different provisions, and are apparently satisfied with them, but it is also true that other States permit voters generally to vote in any primary they desire. This is not and has never been the theory of Maryland elections. It is not a question of testing our laws by the laws of some other State. We test them by our own form of government, and our own Constitution. It may be noted that in the case of *United States v. Classic, supra* [313 U. S. 299, 85 L. Ed. 1368], the provisions of the Louisiana statute were discussed, including a provision "No one who participates in the primary election of any political party shall have the right to participate in a primary election of any other political party, with the view of nominating opposite candidates * * *." No suggestion was made in the opinion of the Supreme Court that this provision, which apparently has the same object in view as our own statutes already discussed, was of doubtful validity. We are unable to find that the Maryland statutes violate, in any way, any of the provisions of either the Federal or the State Constitution.

A subsidiary suggestion made by the appellant is that his application for change of affiliation was made within six months of the usual time for the primary elections (the second Monday in September), but the Legislature of 1945 had fixed an earlier date of June 24, 1946, for such elections in this year. (Section 130A.) The date fixed was due to the desire of the Legislature to give residents of the State, absent and engaged in the military and naval service of the United States, the opportunity to vote by mail. It was thought necessary to advance the date of the primary in order to enable absent soldiers and sailors to get their ballots in time to return them for the general election. With this intention, the appel-

lee, a soldier himself, cannot very well quarrel, even though he thinks it affects him adversely. However, there must necessarily be persons who are inconvenienced by the provisions of all general laws which are passed for the benefit of all people. The fact that the circumstances of a particular individual are such that it is difficult for him to comply with a law, does not give him the right to attack such a law as unconstitutional or void.

For the reasons above stated, we heretofore determined that the order of the Baltimore City Court should be reversed and the petition for mandamus dismissed.