Dear Marvin L. "Doc" Cheatham, Sr.
On behalf of the Baltimore City Board of Elections, you have requested our opinion to resolve an apparent inconsistency between the State election law and the Baltimore City Charter concerning the date of the municipal general election in Baltimore City. The City Charter now places that election in the same year as the presidential election; a provision of State election law refers to the City's general election as occurring on a different four-year cycle) i.e., one year after the gubernatorial election.
In our opinion, the State election law should be construed consistently with the City Charter. The City Charter has set the date of the municipal general election pursuant to a longstanding delegation from the General Assembly authorized by the State Constitution. The specification of the year for the City's general election that first appeared in a recent revision of the State election law was not intended to override the City's choice of an election cycle, but simply to reference the City's practice at the time that revision was enacted. Accordingly, the next general election for municipal offices in Baltimore City should be held on November 2, 2004, consistent with provisions of the Baltimore City Charter.[1]
 I Background
The apparent discrepancy between State law and the City Charter can be traced to a 1998 revision of the State election law and a 1999 amendment of the City Charter.
A. State Election Law
The State election law states that the general municipal election in Baltimore City shall occur "in the year following the election of the Governor," a description that was consistent with the schedule for City elections when the election law was revised in 1998. See Annotated Code of Maryland, Article 33, § 8-301(b) (2001 Supp.). Since the 1998 revision, the State election law has remained unaltered in this regard.[2]
Under the literal language of the State election law, the City's next general election would be held in 2003.
B. City Charter
In 1999, the voters of Baltimore City approved an amendment to the City Charter that altered the timing of municipal elections in order to coincide with presidential election years. See City of Baltimore Resolution 99-16, ratified November 2, 1999.[3] Therefore, under the Charter, the next City municipal election would be held in 2004.
 II General Election for Baltimore City Offices A. History of Authority to Set Date of Election
Subject to the Maryland Constitution, the General Assembly possesses inherent plenary authority over elections in the State. Maryland Constitution, Article I, § 7 and Article III, § 49; see, e.g.,Hennegan v. Geartner, 186 Md. 551, 555, 47 A.2d 393 (1946). The General Assembly has enacted a comprehensive election law, long codified in Article 33 of the Annotated Code. County Council for Montgomery Countyv. Montgomery Association, Inc., 274 Md. 52, 60, 333 A.2d 596 (1975). However, the General Assembly has also exercised its constitutional authority to transfer to the voters of Baltimore City the power to prescribe the date of the municipal general election, a power to be exercised through the City Charter. The unique treatment of municipal elections in Baltimore City is a result of historical developments since the adoption of Maryland's current constitution.
1. Before Home Rule
When it was adopted in 1867, the current State Constitution provided that "[a]ll general elections in this State shall be held on the Tuesday next after the first Monday in the month of November, in the year in which they shall occur." Maryland Constitution, Article XV, § 7.[4]
However, the Constitution set a different timetable for Baltimore City municipal elections. Municipal elections in Baltimore City were to occur on the fourth Wednesday of October beginning in the year 1867. Maryland Constitution, Article XI, §§ 1 — 3.[5] Subject to a limited exception not applicable here, the Constitution also vested in the General Assembly the authority to legislate changes in Article XI) authority that clearly extended to the date of the general election for municipal officials. Maryland Constitution, Article XI, § 9.[6]
In 1898, the General Assembly enacted a new charter for Baltimore City, which scheduled municipal elections in the spring. Chapter 123, Laws of Maryland 1898. Beginning in the year 1899, municipal elections were to occur on "the Tuesday next after the first Monday in May."[7]
 2. Adoption of Home Rule
In 1915, Maryland voters ratified a constitutional amendment, authorizing each county and Baltimore City to assume home rule through adoption of a charter. Maryland Constitution, Article XI-A. Although charter home rule was an option available to the voters of every county as well as Baltimore City, Baltimore City was treated differently in a number of respects.[8] Significant for our purposes is Article XI-A, § 6, which provides in part:
 The power heretofore conferred upon the General Assembly ... to make changes in Sections 1 to 6 inclusive, Article XI of this Constitution, when expressly granted as hereinbefore provided, [is] hereby transferred to ... the voters of [the] City of Baltimore ... provided that said powers so transferred shall be exercised only by the adoption or amendment of a charter ... and provided further that this Article shall not be construed to authorize the exercise of any powers in excess of those conferred by the Legislature upon said ... City as this Article sets forth.
In November 1918, Baltimore City was the first jurisdiction to adopt charter home rule pursuant to the amended Constitution. The Charter Board charged with developing the new charter made limited substantive changes to the 1898 charter then in place,[9] recognizing that the authority to amend Article XI, §§ 1 — 6 remained vested in the General Assembly and that the Legislature had not yet transferred such authority to the voters. Report of the Charter Board (May 4, 1918), reprinted in Charter and Public Local Laws of Baltimore City (1927), at xiii. Relying on the report by a Board committee, the Charter Board explained, "it is beyond the power of [the] Charter Board to include in any Charter submitted by it, any changes in any manner or time of electing or in the term of office of the [Mayor or Council]." Id. at xiv.
Two years later, the General Assembly vested such authority in the voters of Baltimore City, consistent with Article XI-A, § 6 of the Constitution. Chapter 555, Laws of Maryland 1920.[10] However, there was no immediate change in the Baltimore City election cycle.
3. Quadrennial Election Amendment
In 1922, Maryland voters approved an amendment to the Constitution, requiring that elected State officers, other than judges, and elected county officers were to hold office for terms of four years. That amendment also specified that elections were to occur on the "Tuesday next after the first Monday of November, in the year [1926], and on the same day in every fourth year thereafter." See Maryland Constitution, Article XVII, § 2.[11] Had the new Article XVII addressed Baltimore City municipal elections, there is no question that the prior delegation by the General Assembly to Baltimore City, and even the General Assembly's authority to prescribe the date of the municipal election, would have been preempted. However, Article XVII of the Constitution does not apply to municipal elections in Baltimore City. 83 Opinions of theAttorney General ___ (1998) [Opinion No. 98-007 (March 3, 1998)], slip op. at p. 4 n. 2.[12] Thus, the existing delegation of authority to Baltimore City remained in place. Gubernatorial elections fell on the even numbered years between the years of presidential elections, while municipal elections in Baltimore City continued on the cycle previously set in 1898, occurring in the month of May in the year following the gubernatorial election.
4. 1964 Charter Revision
The next relevant charter revision was adopted in 1964. In September 1963, Mayor McKeldin appointed a Charter Revision Commission to determine how the charter should be changed to comply with a new State law, which mandated that the State's political subdivisions use the period July 1 through June 30 as their fiscal year. See Chapter 825, Laws of Maryland 1963. As part of its report, that Commission recommended that the City move its general election from May to November. The Commission explained its reasoning:
 The change in the fiscal year necessitated by State law has compelled us to suggest a corresponding change in the times at which municipal elections are to be held. Otherwise, the annual budgeting procedures would have to be carried through while elections are in process. Consequently, we have recommended that elections be held in November and that they continue to take place in odd years, so that municipal issues will not be confused with questions of State or national importance. To effect the transition from the old to the new election dates, we have provided for an extension of a little over six months in the terms of all incumbent elected officials.
Charter Revision Commission of Baltimore City, Report (April 6, 1964), p. 6. Thus, municipal elections were to occur on the Tuesday next after the first Monday in November beginning in 1967, and every fourth year thereafter) i.e., twelve months following the gubernatorial election.
5. 1998 Revision of State Election Law
Prior to 1999, the State election law did not address the date of the Baltimore City general election, although it did provide a basis for determining the date of the primary election.[13] In 1998, the General Assembly enacted a revision of the State Election Law which took effect January 1, 1999. Chapter 585, Laws of Maryland 1998. As part of that revision, the Legislature included a timetable for the municipal general election, consistent with the municipal charter at that time. In particular, Article 33, § 8-301(b) provides:
 In Baltimore City, there shall be a general election for municipal offices on the Tuesday following the first Monday in November in the year following the election of the Governor.
The 1998 revision did not explicitly revoke the 1920 delegation to the City to set the date of the municipal general election.
6. 1999 Charter Amendment
In 1999, the City changed the year for municipal elections to coincide with the presidential election cycle. In particular, the Mayor and City Council proposed, and the voters approved, an amendment to the City Charter that changed the date of the municipal general election to "the Tuesday next after the first Monday in November 2004," and every fourth year thereafter.
B. Analysis
Under Article XI-A, § 1 of the Constitution, the charter of Baltimore City, as well as that of any county adopting charter home rule, is subject to the public general laws of the State. See, e.g.,Montgomery County v. Board of Supervisors of Elections for MontgomeryCounty, 311 Md. 512, 514, 536 A.2d 641 (1988). A conflict between the public general law and a Baltimore City Charter amendment normally would render the latter inoperative. Wilson v. Board of Sup. of Elections,273 Md. 296, 301-302, 328 A.2d 305 (1974). However, as outlined above, the voters of Baltimore City have long possessed authority from the General Assembly to set the date of the City's general election for municipal officials through amendment of the City's charter.[14] Your inquiry raises the question whether the General Assembly revoked that authority in its 1998 revision of the State election law.
The General Assembly has long acknowledged the authority of the City to set the date of the municipal general election in the City Charter. This is evidenced in part by the silence of State law until 1998 concerning the date of the general municipal election and by the Legislature's adjustment of the date of the primary to coincide with amendments to the City Charter. See Chapter 98, Laws of Maryland 1965 and Chapter 392, Laws of Maryland 1967 (altering municipal primary date following 1964 Charter Revision). This longstanding acquiescence by the General Assembly creates a strong presumption in favor of the right of Baltimore City voters to select the date of the general election through the City Charter. See,e.g., Wells v. Price, 183 Md. 443, 455-56, 37 A.2d 888 (1944).
In construing the provisions of the State election law that specify the date of the City election, we are not limited to the words of the statute, but we can consider other factors such as earlier legislation and materials that fairly add insight to the Legislature's purpose or goal. Kaczorowski v. City of Baltimore, 309 Md. 505, 515, 525 A.2d 628
(1987). Considered in context, the 1998 revision of the State election law does not appear intended to undo the longstanding delegation to the City to set the date of its general election.
The 1998 legislation was an extensive revision of the State election law that only incidentally touched on the dates of Baltimore City elections. It was a product of the work of the Commission to Revise the Election Code.[15] General statutory revisions are presumed to be for purposes of clarification, not substantive change, "unless the language of the recodified statute unmistakably indicates the intention of the Legislature to modify the law." DeBusk v. Johns Hopkins Hospital,342 Md. 432, 444, 677 A.2d 73 (1996) (addressing the revision of the workers' compensation law, former Article 101 of the Code, as Title 9 of the Labor and Employment Article); see also Duffy v. Conaway, 295 Md. 242,257, 455 A.2d 955 (1983) (addressing 1957 revision of State election law). Unlike most recent code revision enactments, however, the 1998 revision encompassed both substantive and nonsubstantive changes.
In its proposed revision, the Commission included drafter's notes following select sections of the revision, explaining changes it viewed as substantive. Revisor's notes are indicative of legislative intent.See, e.g., DeBusk v. Johns Hopkins Hospital, 342 Md. at 443. There are no drafter's notes explaining the Commission's recommendation that became § 8-301. Furthermore, the Commission summarized the substantive changes it recommended as part of its final report) a document entitled to considerable weight in ascertaining legislative intent. See Office Professional Employees International Union v. Mass. TransitAdministration, 295 Md. 88, 101, 453 A.2d 1191 (1982). Again, this document does not include the date of Baltimore City elections among those substantive changes. See Report of the Commission to Revise the Election Code (December 1997), Appendix C.
Revocation of the City's power to set the date of its general elections would have been a significant substantive change in the election law. The absence of any indication in the drafter's notes or the Commission report that the reference to the dates of Baltimore City municipal elections was intended to effect a substantive change in the law suggests that the Commission was not recommending that the Legislature revoke the delegation previously made to the City. We think it unlikely that the Legislature, in adopting the Commission's recommendations, intended to impliedly repeal the authority granted to the City concerning the schedule of municipal elections, when the Commission itself did not interpret its work as having that effect. Moreover, legislative enactments are to be interpreted, whenever possible, to avoid repeals by implication. Farmers Merchants National Bank v. Schlossberg,306 Md. 48, 61, 507 A.2d 172 (1986).
Thus, in our view, the 1998 revision of the State election law was not intended to impliedly repeal authority delegated more than 75 years earlier — and consistently accepted by the General Assembly — for the City Charter to set the date of the general election for municipal officials. Rather, it appears that the drafters included the reference to the date of the general election in Article 33, § 8-301(b) to fill a perceived statutory gap as the State election law had previously set forth the date of the municipal primary election, but was silent on the date of the general election. The revision simply codified in State law the year of municipal elections in a manner reflective of the City Charter. That codification should not supersede the decision of the Baltimore City voters, one year later, to change the cycle for the City's general election.[16]
As prescribed by the City Charter, the next municipal general election in Baltimore City should be held on the Tuesday after the first Monday in November 2004 — i.e., November 2, 2004.
 III Conclusion
For approximately 80 years, no legislative enactment or charter amendment altered the basic rule under which the voters of Baltimore City prescribed the date of the general election for municipal officials. In our view, in enacting the 1998 revision of the State election law, the General Assembly did not intend to alter this pattern. Language in the State election law requiring that the municipal general election be conducted in the year following the gubernatorial election should not be given effect. Thus, the next general election for Mayor, City Council, and Comptroller should be held on November 2, 2004, consistent with provisions of the Baltimore City Charter, as amended in 1999.
Because of the potential confusion over this matter resulting from the inconsistent language in the Charter and the State election law, we urge the General Assembly to address this matter in the 2003 legislative session.[17]
 J. Joseph Curran Attorney General
 William R. Varga Assistant Attorney General
 Robert N. McDonald Chief Counsel Opinions Advice
[1] This conclusion is consistent with advice concerning the general election previously provided by this Office. See Memorandum of Assistant Attorney General Robert A. Zarnoch to Steve Ports (June 23, 1999). You have not asked, and we express no opinion, about the appropriate date for the municipal primary election.
[2] During the 2002 session, the Legislature again reenacted the State election law, replacing Article 33 with a new article entitled "Election Law," as a part of the code revision process. See Chapter 291, Laws of Maryland 2002 (effective January 1, 2003). However, the 2002 legislation made minimal changes to provisions revised during 1998 and no changes to the provisions at issue.
[3] Resolution 99-16 addressed the year of elections for City Council, the office of Mayor, and the office of Comptroller. See
Baltimore City Charter, Article III, § 2(a), Article IV, § 1(a), and Article V, § 1(a), respectively (1996 Supp. 2000). To implement the proposed change, the resolution provided that the individuals elected to those offices in November 1999 would serve an additional year, resulting in one-time five-year terms.
[4] When the 1867 Constitution was adopted, the Governor was to be elected in November, 1867, and every fourth year thereafter. Senators were to be elected for four-year terms, with half of the body elected every other year, and delegates were to be elected for two-year terms.See Niles, Maryland Constitutional Law, Article II, § 2, Article III, §§ 7 and 8 (1915). This sequence continued until ratification of Article XVII of the Constitution in 1922, as discussed in Part II.A.3 below.
[5] At that time, Baltimore still had a bicameral council. Members of the First Branch were to be elected every year while members of the Second Branch were elected every other year. Constitution, Article XI, § 3. Although these provisions remain part of the Constitution, they are considered obsolete. 61 Opinions of the Attorney General 139, 148 (1976). The Mayor was to have a four-year term. Id., § 1.
[6] The constitutional provision reads:
 The General Assembly may make such changes in this Article, except in Section seventh thereof, as it may deem best; and this Article shall not be so construed, or taken as to make the political Corporation of Baltimore independent, of, or free from the control, which the General Assembly of Maryland has over all such Corporations in this State.
The referenced exception, Article XI, § 7, concerns the creation of municipal debt and extension of the City's credit.
[7] The 1898 Charter reflected the recommendations of a Charter Commission that had been appointed pursuant to a municipal ordinance. The justification for the May election date was to further separate "municipal affairs from the influence of the political issues which are necessarily involved in State and Federal elections." See Report of Commission (January 27, 1898), reprinted in Charter and Public Local Laws of Baltimore City (1927), at vii. As the Commission explained, "[t]he spring elections, it is hoped, will enable the citizens of Baltimore to eliminate everything from their municipal campaigns except that which pertains to the best business administration of the city...." Id. at ix.
[8] Authority to adopt or amend a charter is derived directly from Article XI-A of the Constitution, and the charter is often equated to a local constitution. See, e.g., Save Our Streets v. Mitchell, 357 Md. 237,248, 743 A.2d 748 (2000). However, legislative authority, vested by the Constitution in a county council or in the case of Baltimore City, in the City Council, is "subject at all times to provisions of the Constitution and general law, and is limited to those matters allocated by the express powers which the Legislature has delegated under [the Express Powers Act]." Ritchmount Partnership v. Bd. of Supervisors of Elections for AnneArundel County, 283 Md. 48, 57, 388 A.2d 523 (1978).
Consistent with the mandate in Article XI-A, § 2 of the Constitution, the General Assembly has enacted an express powers act for charter counties, codified in Article 25A, § 4 and 25A, § 5 of the Code. However, rather than requiring a single express powers act applicable to both Baltimore City and counties adopting charter home rule, the drafters of Article XI-A referenced the powers previously delegated to Baltimore City, then codified at Section 6 of the Public Local Laws of Baltimore City, and later recodified as Article II of the Baltimore City Charter. Thus, the General Assembly has addressed the express powers applicable to charter counties and those of Baltimore City separately.
[9] A major exception was the creation of a merit system for City employees. Baltimore City Charter, Article I, § 203A et seq. (1918).
[10] When first enacted by the General Assembly, this authority was uncodified. It was initially codified as part of the express powers of Baltimore City by Horace E. Flack, editor of the Code of Public Local Laws of Maryland (1930), and currently appears, as amended, in Article II, § 49 of the Baltimore City Charter (1996 and Supp. 2000). The statute reads:
 The voters of Baltimore City shall have and are hereby expressly granted the power to make such changes in Sections 1 to 6, inclusive, of Article XI of the Constitution of the State of Maryland, as they may deem best; such power shall be exercised only by the adoption or amendment of a charter as provided in Article XI-A of said Constitution; provided, that nothing contained in this subsection (49) shall be construed to authorize the exercise of any powers in excess of those conferred by the Legislature upon said City, as set forth in Article XI-A of said Constitution; and expressly provided, further, that nothing herein contained shall give to the City or to the inhabitants thereof the right to initiate any legislation, laws or ordinances relating to the classification and taxation of real and personal property within the limits of said City.
 The powers heretofore or hereafter granted to the City not included in Article II of its charter shall, nevertheless, be exercisable by said City. Nothing contained in this subsection (49) shall be construed to take away or limit any power vested in the City, under the laws existing prior to June 1, 1945.
The effect of the codification created an anomaly, in that it placed powers granted to the voters through the charter amendment process among the legislative powers of the Mayor and City Council.
[11] The constitutional amendment was based on a recommendation of a study commission appointed by Governor Ritchie, which proposed the reduction in the frequency of elections as a cost-savings mechanism. See Reorganization Commission of Maryland, Plan for the Reorganization of theAdministrative Departments of the State Government of Maryland and forthe Reduction of the Number of Elections in Maryland (1921); see also
Maryland Constitution, Article XVII, § 1.
[12] Although the Annotated Code of Maryland, Article 1, § 14(a), provides that "[t]he word county shall be construed to include the City of Baltimore, unless such construction would be unreasonable," there is no comparable rule of construction in the Constitution.
Furthermore, the transitional provisions of the Quadrennial Election Amendment made no reference to adjusting terms of municipal officials in Baltimore City. See Chapter 227, Laws of Maryland 1922.
The Quadrennial Election Amendment currently excludes elective school boards and, under an amendment ratified in 2000, the Board of County Commissioners of Cecil County. See Maryland Constitution, Article XVII, § 7. By its terms, Article XVII applies only to State and county officials, and thus does not apply to elections of the 156 municipalities in the State governed under Article XI-E of the Constitution.
[13] Subject to a limited exception applicable only to the 1991 election, the State election law required that the primary be held on the second Tuesday after the first Monday in September "of the year in which the municipal elections in the City of Baltimore are to be held." Article 33, § 8-202(b)(1) (1997 Repl. Vol.).
[14] By contrast, the governing body of a charter county must be elected on the schedule prescribed under Article XVII of the Constitution, absent a constitutional justification to vary the time of an election. See, e.g., Prince George's County v. Board of Supervisors ofElections, 337 Md. 496, 654 A.2d 1303 (1994). Thus, this is an area where Baltimore City has been afforded different treatment under the Constitution.
[15] The Commission to Revise the Election Code was created by the General Assembly in 1996 on the recommendation of the Task Force to Review the State's Election Law, a panel established the previous year "in the wake of the contentious 1994 election." See Chapter 431, Preamble, Laws of Maryland 1996. The Commission was charged, in part, with submitting to the legislature "a comprehensive revision of the Election Code that removes archaic provisions, resolves omissions and contradictions, and incorporates substantive, structural changes in the current law that the Commission considers necessary to meet the needs of modern election administration." Article 41, § 18-309(e)(5) (1997 Repl. Vol.). In submitting recommendations to the legislature, the Commission adopted a two-pronged approach, submitting one bill proposing nonsubstantive changes as well as non-controversial substantive changes, see Chapter 585, Laws of Maryland 1998, and eight separate bills proposing changes deemed to be potentially controversial.
Although the Commission revised a significant portion of Article 33, its revision was not comprehensive. For example, the Commission did not address provisions concerning campaign finance. See Report of the Commission to Revise the Election Code (December 1997), pp. 4-5. Remaining provisions were revised by a subsequent committee and the entire State election law was reenacted as a new article during the 2002 session. See note 2 above.
[16] Efforts to amend Article 33 in a manner consistent with the dates set forth in the 1999 Charter amendment have been unsuccessful. Senate Bill 447/House Bill 782 (2000); Senate Bill 452/House Bill 311 (2001); Senate Bill159/House Bill 139 (2002). However, the failure of those proposals is not indicative of a legislative understanding that the 1998 enactment impliedly repealed the delegation to the City. The Court of Appeals has repeatedly made clear that failed legislation is a rather "weak reed" in ascertaining legislative intent. See, e.g., McCulloch v. Glendening, 347 Md. 272, 289-290, n. 13, 701 A.2d 99 (1997). Nor is the enactment of the Election Law Article during the 2002 session an endorsement or rejection of the 1998 change. The relevant Revisor's Notes simply state that "[n]o changes are made." See Chapter 291, Laws of Maryland 2002. Stated otherwise, the status quo was preserved.
[17] Such legislation would also presumably address a similar contradiction in the dates specified for the primary election. Compare Article 33, § 8-201(b) with Baltimore City Charter, Article III, § 1(a)(1), Article IV, § 1(a)(1), Article V, § 1(a)(1)B.
 *Page 201