STATE ex rel. JOHN L. GULDEN v. ROBERT L. JOHNSON.[1]

September 10, October 17, 1902.

No. 13,172.

### Primary Election—Ballot.
In making up the ballots for primary election, blank spaces or lines need not be left after the name of the last candidate for each office, and under the title of each office for which candidates are to be selected, wherein an elector of a party can write the name of the candidate of his choice.

### Blank Spaces on Ballot.
The primary election law, in so far as it does not require blank spaces to be left in the primary ballots for electors to write the names of their candidates, is constitutional.

Application to the supreme court, in behalf of John L. Gulden, for writ of mandamus requiring Robert L. Johnson, as county auditor of Mower county, in making up and printing the official ballots to be used in that county at the primary election to leave certain blank spaces thereon, or show cause why such changes should not be made. Application denied.

*Arthur W. Wright,* for applicant.

*W. B. Douglas,* Attorney General, and *R. E. Shepherd,* County Attorney, for respondent.

The application having been submitted after oral argument, the following decision was filed September 10, 1902:

PER CURIAM.[2]

Upon the affidavit of the relator, alleging that certain errors have been committed by the respondent in making up the official ballots for the primary elections to be held in the county of Mower on September 16, 1902, an order was made by a justice of this court, requiring the respondent to correct such alleged errors, or show cause before the court why he should not do so. The

[1] Reported in 91 N. W. 604, 840.

[2] COLLINS, J., absent, took no part in the decision.

respondent appeared on the return day of the order, and asked that he be discharged, for the reason that the ballots were made up as required by the primary election law.

This presents the question whether, in making up the official ballots for primary elections, blank spaces or lines must be left after the name of the last candidate for each office, and under the title of each office for which candidates are to be selected, wherein each elector of a party may write the names of the candidates of his choice. No such spaces were left in any of the ballots here in question. Such being the case, are the proposed ballots in accordance with the requirements of the primary election law? The necessity for a prompt answer to the question, to the end that the ballots may be printed and distributed in time for the election, limits us for the present to a bare statement of our conclusions, to be followed in due time by a formal opinion. We answer the question in the affirmative, for the primary election law does not require such blank spaces to be left in the primary ballots. The law, so construed, is constitutional.

Therefore, it is ordered that the application to correct the ballots in this case is denied, and the order to show cause discharged.

On October 17, 1902, the following supplemental opinion was filed:

LEWIS, J.

This case having been presented at a time when it was impossible to prepare a formal opinion, a short decision was filed, giving the conclusions of the court, and we now proceed to state in detail our reasons therefor.

As stated in the previous decision, the case presents the question whether, in making up the official ballot for the primary election, blank spaces or lines must be left after the name of the last candidate for each office wherein the elector may write the name of his choice for candidates; and, further, if the law does not make such provision, then is it constitutional? This law defines political parties for the purpose of nominating candidates to go upon the official ballot, and provides a method of nomination by ballot; provides how candidates may file notice of intention to be such,

and in what manner the ballot shall be made up. The act also provides for notices of the election, judges and clerks, and the method of conducting the election in detail, and the canvass of the votes. There is a striking similarity in the method provided for conducting the so-called primary election and certain sections of the general election law. Taking up the various sections, we do not think provision is made for the blank lines referred to. In the first place, the law deals with nominations, and not elections; and, if there is any doubt as to the meaning of any particular provisions, they must be construed with reference to the manifest intention of the legislature as expressed in the whole act. In section 6 we find this reference to the general election law:

"Except as herein otherwise provided, the following sections of said general election law are hereby made applicable to primary elections and primary election ballots under this act, to-wit: §§ 23, 24, 25, 26, 29 and 30." Laws 1899, c. 349.

And again, in section 5 (Laws 1901, c. 216), except as herein otherwise provided, several other sections of the general law are made applicable to the primary election. Section 25, here referred to, is Laws 1893, c. 4, § 25, afterwards amended by Laws 1901, c. 109, § 1; and it is this section which contains the provision as to blank lines. The other sections adopted by the primary law have reference to the method of determining the number of ballots, general description of ballots as to size, paper, color, method of printing, method of voting, initialing of ballots, regulation of polling places, challenge of voters, manner of voting, and violations and penalties for fraudulent voting. It is evident that it was not the intention to incorporate into the primary law that part of section 25 of the general election law having reference to blank spaces, for the reason that such provision is inconsistent with the main purpose of the primary act. Its terms are plain and consistent. The language of the reference is, "except as herein otherwise provided," and we think it is "otherwise provided," and that section 25 and other sections so far as adopted, have reference only to those matters not already defined and provided for by the primary law.

If the election of candidates to the position of nominees is an

election within the meaning of article 7 of the constitution, then the primary law, as above construed, is unconstitutional. It would, in certain cases, deprive the voter of his privilege to exercise the elective franchise. Such an occasion might arise when no candidates appear for nomination, no provision being made for filling vacancies or for leaving blank lines on the ballot to enable the voter to write in the name of some person of his choice. But it is very clear that the election of nominees provided for in the primary law is not the election referred to in the constitution. The language of article 7 bearing upon the subject is as follows:

"Every male person of the age of twenty-one years or upwards, belonging to either of the following classes, who shall have resided in the United States one year and in this state four months next preceding any election shall be entitled to vote at such election in the election district of which he shall at the time have been for ten days a resident for all officers that now are or hereafter may be elective by the people."

By "officers" is meant the executive or administrative agents of the state or the governmental subdivisions thereof, and the election mentioned has reference only to the selection of persons to fill such offices. The election thus defined cannot reasonably be given so broad an interpretation as to include the selection of nominees for such offices.

The evident object of the legislature in passing the primary law was to cure certain abuses which had grown up in the course of time in party organization, and it cannot be seriously questioned that it was within the power of the state, in the interest of public order and good government, to provide a general method by which party candidates may be selected; and the only remaining question, which goes to the constitutionality of the act, is, has the legislature, in adopting this law, overstepped the bounds of reasonableness? In other words, is the law so restrictive in its measures that there is an unwarranted interference with the elector in voting for nominees?

In the first place, we must keep clearly in mind that the law is dealing with political parties or organizations. It is based upon the theory that organization, or party, is the basis of the dissemi-

nation and enforcement of political ideas, and that the individual must necessarily co-operate with such an organization. There is no restriction upon the individual, so far as the promulgation of political opinions is concerned; and the independence of the elector to cast his vote at the general election for those whom he believes will best represent his political ideas or best conserve public interests remains undisturbed. The primary election law simply adopts a general method, by which all parties and organizations shall, in the interests of public order, upon a certain day, within certain regulations, meet, and select their various nominees to go upon the ballot for the ensuing election. In limiting the ballot so that it shall contain only the names of those candidates who have filed notice of intention to be such, the law assumes that a political party is of sufficient vitality, and has characteristic principles to identify it so that either voluntarily or in obedience to party demands leaders or candidates will naturally come forward. The law is also constructed upon the theory that if, at any time, any political party previously in existence shall have become so enervated that it has no living and vital principles to present to the people, and there are no men having sufficient interest to stand as sponsors for and advocate its principles, then there no longer remains a necessity for its recognition as a party for the purpose of selecting nominees at such election.

We are of the opinion not only that the legislators purposely limited the electors at the primary election to vote for those candidates who had filed notice of their intention to be such, but that in making such restriction there is no unwarranted or unreasonable interference with the exercise of the elective franchise, and that the law is therefore constitutional as against the objection raised.