## BOARD OF SUPERVISORS OF ELECTIONS OF BALTIMORE CITY *v.* BLUNT ET AL.
### (Two Appeals—Consolidated)
[No. 9, October Term, 1952 (Adv.)]

*Decided, per curiam, April 8, 1952.*

*Opinion filed May 8, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Hall Hammond, Attorney General,* and *J. Edgar Harvey, Deputy Attorney General,* for appellant.

*Hyman A. Pressman* for Royden A. Blunt, Webster C. Tall and Hyman A. Pressman, appellees.

*E. Milton Altfeld,* with whom was *R. Lewis Bainder* on the brief, for Temus R. Bright, appellee.

HENDERSON, J., delivered the opinion of the Court.

The appeals in these consolidated election cases are from orders sustaining demurrers to answers filed to petitions for *mandamus,* and directing the writs to issue as prayed. The prayer in one case was that the Board be commanded to "keep the write-in slots on the voting machines of Baltimore City unlocked for the Primary Election to be held on May 5, 1952 so as to give the voters at said Primary Election an opportunity to write on the ballot and mark in the proper place the name of any person other than those printed on the ballot." In the other case the prayer was that the Board be commanded "to allow your petitioner and all other duly

registered voters of the City of Baltimore, State of Maryland, the right to indicate his or her preference for a nominee of the office of the President of the United States of America by writing in the name of their preference in the place provided therefor on all voting machines to be used in the Primary Election in said City and State on Monday, May 5, 1952." At the request of all parties the cases were advanced and heard on April 8, 1952. On the same day a *per curiam* order was filed, reversing the orders of the lower court and dismissing the petitions for mandamus. We now state the reasons for our action.

No procedural or constitutional questions were raised in the briefs. The only question raised was whether the Maryland statutes dealing with primary elections, properly construed, require that an opportunity be given voters to write in the names of persons not on the official ballot. The lower court held that they do. We take a contrary view.

The appellees rely primarily upon a sentence in Section 62, Article 33 of the Code (1947 Suppl.) which reads: "Nothing in this Article contained shall prevent any voter from writing on his ballot and marking in the proper place the name of any person other than those already printed for whom he may desire to vote for any office, and such votes shall be counted the same as if the name of such person had been printed upon the ballot and marked by the voter." In the 1939 Code this sentence (in what was then Section 97) was printed in italics with a footnote by the Codifier stating: "Sec. 97 is printed to conform to the decision of the Court of Appeals in *Jackson v. Norris*, 173 Md. 579, [195 A. 576]. The matter in italics, which was eliminated by Chapter 581 of the Acts of 1924, has been restored." The section as thus modified was reenacted without change by Chapter 934, Acts of 1945, as section 57. This Act was "not an entirely new law but is a compilation or rearrangement of previously existing law with such amendments as the Legislature thought it advisable

to make in order to produce a more compact and harmonious system". *Hennegan v. Geartner,* 186 Md. 551, 556, 47 A. 2d 393. Since the section was not amended the legislature obviously adopted the view expressed by the Codifier.

In *Jackson v. Norris, supra,* 173 Md. at page 604, 195 A. at page 588, this court held invalid a contract for the purchase of voting machines by Baltimore City because the machines in question did not "provide for the elector casting a vote for any other than a candidate whose name appears on the official ballot." But it was definitely stated, 173 Md. at page 603, 195 A. at page 588: "The conclusion of the court that it is the constitutional right of an elector to cast his ballot for whom he pleases, and that it is necessary for him to be given the means and the reasonable opportunity to write or insert in the ballot the names of his choice, is subject to this limitation, that the right is not applicable to primary elections, nor to municipal elections other than those of the City of Baltimore. This exception must be made, since the provisions of Article 1, section 5 of the Constitution have been held to apply solely to the right to vote at federal and state elections and municipal elections in the City of Baltimore." The sentence restored by the Codifier "to conform with this decision", could not be construed to accomplish a purpose directly opposed to the limitation therein contained. The sentence had originally been incorporated in what was then Section 49, Chapter 202, Acts of 1896, and Section 49, Chapter 2, Acts of 1901, and eliminated in 1924 for the avowed purpose of eliminating blank spaces on the ballot in all elections, general or primary. It may be noted that state-wide primary elections were not regulated by law in this State until 1910, when Chapter 741 of the Acts of 1910 was adopted. The sentence included in 1896 and 1901 necessarily applied to general elections and not to primaries.

Moreover, it seems clear from the language itself that Section 62 is not applicable to primary elections. The

right reserved is to insert the name of any person "for whom he may desire to vote *for any office*," on a ballot prepared by the Board of Supervisors "for every election for public officers". (Italics supplied.) Section 63 refers to "candidates for office". Both sections are under the subtitle "Elections". Section 53, which deals with primary elections under the subtitle "Nominations and Primaries", refers to "candidates for nomination". Thus, the write-in privilege does not in terms extend to "candidates for nomination" but only to "candidates for office", which are dealt with under separate subtitles. We find no language like that in Section 62 in the subtitle dealing with primaries. Section 58 does provide that a primary election "shall be held and conducted and determined in the manner and form provided by this Article for general elections and subject to all regulations, requirements and provisions as prescribed by this Article for general elections, insofar as the same is or may be applicable to said primary elections, except as may be herein otherwise provided". This guarded incorporation by reference of the general election procedure cannot be held to create a new substantive right, in the face of the legislative and judicial history which clearly shows that the write-in privilege was never applicable to primary elections, and, indeed, is inconsistent with the whole theory of primary elections. Cf. *State ex rel. Schoyck v. Board of County Commissioners,* 46 N. M. 472, 131 P. 2d 278, 284.

The appellees, however, attempt to spell out a legislative requirement by piecing together two other sections of the election Article. Section 205 recites that "The word 'election' as used in this Article shall be construed to include elections * * * to choose some public officer or officers under the laws of this State or of the United States * * * *and unless otherwise stated shall also be construed to include primary as well as general and special elections*". The italicized clause was added by Chapter 934, Acts of 1945. Section 87, as enacted by Chapter 94, Acts of 1937, and reenacted without change

by Chapter 934, Acts of 1945, provides that where voting machines are used such machines shall "(d) permit each voter to vote, at any election, for any person and for any office for whom and for which he is entitled to vote * * *". This language does not in terms confer a right to vote for one who is not a candidate. To argue that he is entitled to vote for any person, "for whom * * * he is entitled to vote", simply begs the question. Moreover, Section 87 (f) provides that every voting machine "be capable of adjustment by election officers, so as to permit each voter at a primary election to vote only for the candidates seeking nomination by the political party with which he is affiliated, if he is affiliated with a political party, and so as to preclude him from voting for the candidates seeking nomination by any political party with which he is not affiliated". The only way in which this mandate could be carried out is by restricting the write-in privilege at a primary. It would be strange, indeed, if not fatally discriminatory, for the legislature to extend the privilege to the users of voting machines but not to the users of paper ballots which are still in wide use outside of Baltimore City.

The appellees also seek to find a legislative mandate in the language of Section 217. This section is a part of the law, enacted by Chapter 799, Acts of 1945, permitting absentee voting by mail, by voters in the armed forces, at primary and general municipal elections in Baltimore City. Under the heading "Instructions to Voter", in the case of primary elections, the voter is warned not to "put on the ballot any * * * mark except the 'X' mark or marks used to vote or the name of a written-in candidate". Section 217 (g) provides: "If you desire not to vote for any of the candidates named for an office on the ballot, you may write in the appropriate blank space on the ballot, the name of the person of your choice for such nomination." This language is identical with the language of Section 310 (g) of the state-wide absentee voting law as enacted by Chapter 1, Acts of 1944 (Special Session). But in 305(3)

of that Act, "Election" was defined to mean "any general state-wide or any general or special Congressional Election held in this State during the effective period of this Act", hence it had no reference to primary elections. The Attorney General suggests that it was copied into the City Act without a full realization of this fact. However that may be, when the state-wide absentee voting law was made applicable to both primary and general elections by Chapter 934, Acts of 1945, Section 310 (g), renumbered Section 136 (g), was changed to read: "If, *in any election other than a primary,* you desire not to vote for any of the candidates named for any office on the ballot, you may write in, in the appropriate blank space on the ballot, the name of the person of your choice for such office." (Italics supplied). Thus, both before and after the adoption of the City Act, governing municipal elections with which we are not now concerned, the legislature clearly indicated that write-in votes in State-wide primary elections are not permissible. Here again, it is inconceivable that the legislature could have intended to deny a right to absentee voters, if the right had, by the same enactment, been extended to other voters in the same election.

We need not discuss the other points made by the appellants as to the difficulties that would arise in cases where there is no candidate, or only one candidate for a particular office, in which instances the law makes no provision for a primary election to be held. Cf. Section 59 (g) and Section 58 (b). It is sufficient to say that we find no support for the contention that the election law requires or permits write-in votes at a State-wide primary election.

It was suggested at the hearing that such a construction of the law might be open to constitutional objection. So far as the Maryland Constitution is concerned, it was held in *Kenneweg v. Allegany County,* 102 Md. 119, 62 A. 249, that the legislature had inherent power to adopt a direct primary law applicable to Allegany County.

Such power did not have its genesis in any provision of the State Constitution, nor was there any limitation therein upon its exercise. In *Jackson v. Norris, supra,* it was specifically stated that our constitution does not require that a write-in privilege be extended at such an election. Cf. *State v. Johnson,* 87 Minn. 221, 91 N. W. 604, 840, cited in the *Jackson* case. We think the *Jackson* case is controlling.

It is suggested, however, that the decision in the *Jackson* case, construing our constitution as guaranteeing the write-in privilege in federal elections, but not in federal primaries, was predicated on the assumption that the power of Congress to control elections did not extend to primaries. It is pointed out that in two recent cases, *United States v. Classic,* 313 U. S. 299, 61 S. Ct. 1031, 85 L. Ed. 1368, and *Smith v. Allwright,* 321 U. S. 649, 64 S. Ct. 757, 88 L. Ed. 987, the Supreme Court has held that where a primary is by law an integral part of the election process, Congress may regulate its operation. In the *Classic* case Congress had adopted a penal statute under which election officials were prosecuted for conspiracy to fraudulently deny a voter's conceded right to vote in a primary because of his race. In the *Allwright* case, a Negro was barred from a primary by a resolution denying party membership to Negroes. These cases are readily distinguishable both because they involved racial discrimination and absolute exclusion. We have been referred to no case, and we have found none, holding that a limitation to vote for candidates is unreasonable or a violation of the federal constitution. There are many State decisions sustaining such limitations. See note 47 Col. L. R. 1207; *State v. Johnson, supra.* Far more serious geographical restrictions on voting rights have been sustained by the Supreme Court. *MacDougall v. Green,* 335 U. S. 281, 69 S. Ct. 1, 93 L. Ed. 3; *South v. Peters,* 339 U. S. 276, 70 S. Ct. 641, 94 L. Ed. 834. See also *Ray v. Blair,* 343 U. S. 214, 72 S. Ct. 654.

Nor do we think the fact that under some circumstances the Supreme Court might find a primary law in contravention of the federal constitution, requires a reconsideration of the point decided in the *Jackson* case. That decision did not rest upon a consideration of the federal authorities. If our constitution does not guarantee the right to vote at a primary election for one not a candidate, and the legislature has not granted such a right, then the right can be extended only if required by the overriding force of the federal constitution, as construed by the Supreme Court or implemented by an Act of Congress. Finding no such decision or Act of Congress, and nothing unreasonable or discriminatory in the Maryland law as construed, we adhere to our prior decision.