Warnsey WIGGINS, Plaintiff,

v.

State of RHODE ISLAND, State Police Department, Steven M. Pare, individually and in his official capacity as Superintendent of the Rhode Island State Police,[1] Erik Jones, individually and in his official capacity as state trooper employed by the State of Rhode Island, Rhode Island State Police, Todd Catlow, individually and in his official capacity as state trooper employed by the State of Rhode Island, Rhode Island State Police, Defendants.

C.A. No. 02–141S.

United States District Court,
D. Rhode Island.

July 22, 2004.

---

1. Colonel Pare has been dismissed from the action by stipulation of the parties.

V. Edward Formisano, Esq., Sinapi Formisano & Coleman, Ltd., Cranston, RI, for Plaintiff.

Brenda D. Baum, Esq., James R. Lee, Esq., Susan E. Urso, Esq., Office of the Attorney General, Providence, RI, for Defendants.

### DECISION AND ORDER

SMITH, District Judge.

In this civil rights action, the Court is called upon to travel a path of collateral estoppel, qualified immunity and federal constitutional issues as tangled and circuitous as the roadways of the Phenix section of West Warwick, Rhode Island, where the critical events giving rise to this action occurred. Plaintiff Warnsey Wiggins asserts that two Rhode Island state police officers violated his rights under the Fourth Amendment to the United States Constitution, 42 U.S.C. § 1981, Article I, § 6 of the Rhode Island Constitution, and assorted theories of Rhode Island common and statutory law. Defendants move for summary judgment on all counts.

The Court heard oral argument on May 4, 2004. For the following reasons, the Court grants summary judgment in part and denies it in part.

### I. Facts

Most of the events giving rise to the claims in this case are disputed. The Court will note as to each fact whether it is agreed to or contested.

In the waning hours of February 14, 1999, Plaintiff was observed by Rhode Island State Troopers Erik Jones and Todd Catlow (Officers) driving through a number of stop signs (without stopping) at various intersections in the Phenix section of West Warwick, Rhode Island. There is a dispute about the manner in which Wiggins' car was pulled over, but it is agreed that the Officers followed Wiggins and that Wiggins did eventually pull over and stop his car. The Officers then walked up to Wiggins' car. As they approached, the Officers testified [2] that they noticed Plaintiff look over his shoulder, reach into the area below the passenger seat, and hurriedly move his hand to his mouth. Wiggins disputes this testimony.

2. As discussed below, the Officers have testified before two state court tribunals and in their respective depositions about the events giving rise to this lawsuit.

The parties agree that the Officers ordered Wiggins out of his car and he complied. Officer Jones testified that he smelled alcohol emanating from the car and Wiggins' person. Wiggins disputes this. The parties agree that the Officers ordered Wiggins to place his hands on the trunk of his car, after which they frisked him. There are conflicting accounts about the exchange that followed the search. The Officers contend that they asked Wiggins questions about what was in his mouth and only received unintelligible sounds in response. Wiggins contends that he responded by saying "nothing."

At some point during the questioning, the Officers testified that they believed Wiggins was concealing something in his mouth. Wiggins denies that there was anything in his mouth. While the parties agree that Officer Jones asked Wiggins to open his mouth and shone a flashlight inside, the parties disagree about what next transpired. The Defendants claim that Wiggins began to flail his arms about and then lowered his shoulder as if to make a charge at them. They contend that they struggled with him and eventually wrestled him to the ground and subdued him. Wiggins claims that he was choked and bludgeoned for no reason, during which time he urinated on himself. However he got there, it is agreed that Wiggins was handcuffed while he was on the ground, after which the Officers placed him in the back of a police cruiser. The Officers testified that they observed that Wiggins' eyes were watery and bloodshot and that his speech was slurred. Wiggins disputes this, but the parties agree that the Officers asked him whether he had drunk any alcohol and that he estimated that he had drunk 2–3 beers.

At this point, it is agreed that Wiggins was read his *Miranda* rights and arrested. Wiggins claims that Officer Catlow then stated, "wait one second," and proceeded to search Wiggins' car. The search yielded the car registration and a blue pen with what was later established as cocaine residue on it (about which there is no dispute). Wiggins was transported to the State Police Barracks in Wickford, Rhode Island. It is agreed that Wiggins refused to take a breathalyzer test, that he was given a field sobriety test (which he failed), and that he was strip-searched and placed in a cell.

## II. *Procedural History.*

Wiggins was charged with the following: possession of cocaine, resisting arrest, driving under the influence of alcohol, failure to stop at three stop signs, and refusal to take a breathalyzer test.

The charges of failure to stop at three stop signs and refusal to take a breathalyzer were tried before the Rhode Island Traffic Tribunal (RITT), which is part of the Rhode Island District Court. At the time of the RITT hearing, Wiggins and his counsel were aware that the traffic citations issued to Wiggins for failure to stop at three stop signs misidentified the names of the streets at those respective locations. For tactical reasons, however, Wiggins' counsel did not make Judge Yashar of the RITT aware of these discrepancies. On May 28, 1999, without the benefit of the evidence of street misidentification, Judge Yashar found that the police had reasonable suspicion to stop Wiggins' car and that the stop was lawful, based on their observations that Wiggins had not stopped at three stop signs. Judge Yashar adjudged Wiggins guilty of both charges and Wiggins appealed the decision to the RITT Appeals Panel.

During the pendency of that appeal, the charges of possession of cocaine, driving under the influence of alcohol, and resisting arrest were prosecuted in Rhode Island Superior Court. Wiggins filed a mo-

tion to suppress the evidence obtained by the warrantless seizure and search of his person and car. It was at the suppression hearing that Wiggins chose to present the discrepant evidence of misidentified street locations in order to impeach the testimony of the Officers. On October 20, 1999, the Superior Court, Fortunato, J., granted the suppression motion, finding that Officers Jones and Catlow were not credible witnesses and that there was no probable cause or reasonable suspicion to stop Wiggins' car. The State of Rhode Island (State) consequently dismissed the charges of driving under the influence and possession of cocaine. Justice Fortunato subsequently held a bench trial on the charge of resisting arrest and acquitted Wiggins.

On October 22, 1999, armed with the victory of the suppression of evidence in Superior Court, Wiggins filed a motion to vacate the judgment of Judge Yashar with the RITT. The motion to vacate was held in abeyance pending the decision of the RITT Appeals Panel. On May 27, 2000, the RITT Appeals Panel denied Wiggins' appeal of Judge Yashar's initial judgment. Wiggins took an appeal of that decision to the Rhode Island District Court, which was denied on February 8, 2001.

Judge Yashar then entertained the motion to vacate her prior judgment and denied it on April 19, 2001. Wiggins appealed this denial as well, and the RITT Appeals Panel affirmed Judge Yashar's denial. Wiggins appealed to the Rhode Island District Court and the District Court, through Chief Judge DeRobbio, denied the appeal.

Neither decision of the District Court (1) affirming Judge Yashar's initial ruling, or (2) affirming her refusal to vacate was appealed to the Rhode Island Supreme Court, as authorized by R.I. Gen. Laws § 31–41.1–9(h).[3]

Instead, and with new counsel, Plaintiff brought this civil rights action in Superior Court on January 31, 2002. The Complaint sets out claims for illegal search and seizure in violation of Wiggins' civil rights pursuant to 42 U.S.C. § 1983 and Article I, § 6 of the R.I. Constitution; violation of his civil rights pursuant to 42 U.S.C. § 1981; and state tort theories of negligence, assault, battery, false arrest, malicious prosecution, and violation of the right to privacy.

Defendants removed the case to this Court on March 22, 2002.[4] They now move for summary judgment on 5 grounds: (1) the case against the State and the Officers in their official capacities should be dismissed on the basis of the rule enunciated in *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); (2) the doctrine of collateral estoppel bars relitigation of the issue of probable cause to stop Wiggins' car; (3) the 42 U.S.C. § 1983 claims against the Officers in their individual capacities should be dismissed on the basis of the doctrine of qualified immunity; (4) Wiggins has not alleged sufficient facts to withstand summary disposition on his claim under 42 U.S.C. § 1981; and (5)

---

**3.** Appeal of a RITT decision to the Rhode Island Supreme Court is available under the following circumstances:

 (h) *Certiorari.* Any person who has exhausted all remedies available to him or her under the provisions of this section, including an appeal before the district court, may seek review by petition for writ of certiorari to the supreme court.

R.I. Gen. Laws § 31–41.1–9(h).

**4.** Senior Judge Ronald R. Lagueux recused himself from the case on June 5, 2002, whereupon it was transferred to Judge Mary M. Lisi. Judge Lisi transferred the case to the undersigned on December 4, 2002.

Plaintiff's state tort claims are defeated by state qualified immunity.

### III. Standard of Review

Summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When a motion for summary judgment is directed against a party that bears the burden of proof, the movant bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If that showing is made, the nonmovant then bears the burden of producing definite, competent evidence to rebut the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence "cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial." *Mack v. Great Atl. & Pac. Tea Co., Inc.*, 871 F.2d 179, 181 (1st Cir. 1989). In other words, the nonmovant is required to establish that there is sufficient evidence to enable a jury to find in its favor. *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir.1997).

### IV. Analysis

#### A. Will v. Michigan

■ Plaintiff has sued the State and two of its police officers in their official and individual capacities. He seeks legal and declaratory relief. The rule of *Will v. Michigan* is that damage actions may not be brought against states, or individuals in their official capacities as state representatives, because states are not "persons" within the meaning of 42 U.S.C. § 1983. *See Will*, 491 U.S. at 71, 109 S.Ct. 2304. To the extent that Plaintiff seeks damages or declaratory relief against the State or its police officers in their official capacities pursuant to section 1983, summary judgment is therefore appropriate. *See Bilida v. McCleod*, 211 F.3d 166, 171 n. 4 (1st Cir.2000) ("Nor can officers be sued in their official capacities for the relief sought here: damages and a declaration regarding past violations of law.") (citations omitted). However, to the extent that Plaintiff seeks damages or declaratory relief against Officers Jones and Catlow in their individual capacities, *Will* is inapplicable.

#### B. Collateral Estoppel

##### 1. The RITT Decision

Defendants next argue that the issue of probable cause to stop Wiggins' car was already fully litigated before the RITT. Since Judge Yashar found that there was reasonable suspicion to stop the car, Defendants contend that Plaintiff is collaterally estopped from claiming otherwise in this litigation.

Nothing less than a bizarre anomaly exists in this case: Judge Yashar found that there was reasonable suspicion to stop the car based on the fact that Wiggins had not stopped at three stop signs. Justice Fortunato, however, in the context of a suppression motion, determined that there was no probable cause to stop Wiggins' car. He found that Officers Jones and Catlow were not credible witnesses, based in large part on the Officers' misidentification of street names in West Warwick. Thus, this Court is faced with the unusual situation of two state court judges reaching opposite conclusions on the same es-

sential facts—both of which, it is claimed, have potentially preclusive effect on the issues before this Court.

 Collateral estoppel "is the doctrine which renders conclusive in a subsequent action on a different claim the determination of particular issues actually litigated in a prior action." *Providence Teachers Union v. McGovern*, 113 R.I. 169, 319 A.2d 358, 361 (1974).[5] It requires: (1) an identity of issues; (2) a valid and final judgment on the merits; and (3) establishing that the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior action. *State v. Santiago*, 847 A.2d 252, 254 (R.I.2004). In order to use the doctrine of collateral estoppel defensively,[6] as Defendants purport to here, it must be clear that the party opposing its usage had a "full and fair opportunity to litigate an issue" in a prior lawsuit. *Mendoza*, 464 U.S. at 159, 104 S.Ct. 568 (citing *Standefer v. United States*, 447 U.S. 10, 24, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980)).

 Since the two state court decisions conflict on the issue of probable cause to stop Wiggins' car, the question for this Court is whether (and how) to give preclusive effect to both of them. Plaintiff first

advances the unconvincing and unsupported argument that because the RITT is a court of "inferior jurisdiction" to the Superior Court, its findings should be disregarded and the Superior Court's decision alone should be credited. The Court is not persuaded. Rhode Island has deemed the RITT capable of making probable cause determinations in the context of its jurisdictional ken; its judgments therefore are worthy of the same full faith and credit as those of any other state tribunal. Furthermore, the Superior Court does not have appellate jurisdiction over the decisions of the RITT,[7] so it is technically incorrect to call it "inferior" to the Superior Court, at least for purposes of this collateral estoppel analysis.

Plaintiff's next attempt to circumvent the preclusive effect of the RITT determination depends upon a rarely invoked exception to the binding effect of collateral estoppel:

Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:

. . . . .

5. Since the issue of probable cause was decided by a Rhode Island tribunal, the Court looks to state collateral estoppel law. *See Bilida v. McCleod*, 211 F.3d 166, 170 (1st Cir.2000) ("Rhode Island law determines whether the state ruling in the criminal case is to be given preclusive effect in the federal action."); *Pascoag Reservoir & Dam, LLC v. Rhode Island*, 217 F.Supp.2d 206, 213 (D.R.I.2002) ("When a federal court examines whether a state court decision has a preclusive effect, the federal court must use the same law that a state court would employ in making such a determination.") (citation omitted).

6. "Offensive use of collateral estoppel occurs when a plaintiff seeks to foreclose a defendant from relitigating an issue the defendant has previously litigated unsuccessfully in another

action against the same or a different party. Defensive use of collateral estoppel occurs when a defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in another action against the same or a different party." *United States v. Mendoza*, 464 U.S. 154, 159 n. 4, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 4, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)).

7. From the RITT, the appellate route is as follows: first, to the RITT Appeals Panel, R.I. Gen. Laws § 31–41.1–8(b); second, the Rhode Island District Court, R.I. Gen. Laws § 31–41.1–9(a); third, the Rhode Island Supreme Court, R.I. Gen. Laws § 31–41.1–9(h).

(5) There is a clear and convincing need for a new determination of the issue . . .

(c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

Restatement (Second) of Judgments § 28(5)(c) (1982). Comment g to this section makes clear that this exception should be invoked sparingly:

> *Rationale for Subsection (5).* As stated in the introduction to Title E, the policy supporting issue preclusion is not so unyielding that it must invariably be applied, even in the face of strong competing considerations. There are instances in which the interests supporting a new determination of an issue already determined outweigh the resulting burden on the other party and on the courts. But such instances must be the rare exception, and litigation to establish an exception in a particular case should not be encouraged. Thus it is important to admit an exception only when the need for a redetermination of the issue is a compelling one.

Plaintiff trumpets a case decided by the Supreme Court of Oklahoma, *Danner v. Dillard Dep't Stores, Inc.,* 949 P.2d 680 (Okla.1997), applying this exception. There, defendants in a criminal action for larceny were prosecuted and found not guilty. In the probable cause hearing, a witness testified to certain key facts that resulted in a finding of probable cause, but which did not come into evidence at trial after the witness recanted. After acquittal, plaintiffs filed a civil action based on various state law theories. They contended that they had not had a "full and fair opportunity" to litigate the issue of probable cause, and the Oklahoma Supreme Court agreed because

> [a]t trial [the witness] recanted virtually all the key accusations necessary to conclude that a crime had occurred. . . . Second, there were key facts that were not and *could not* have been discovered before the preliminary hearing. . . .

*Id.* at 683 (emphasis in original). Plaintiff likens *Danner* to this case by claiming that he, too, did not have a "full and fair" opportunity to litigate the issue of probable cause before the RITT because the police officers' testimony was perjured. Pl. Mem. Opp. S.J. at 9.

Serious accusations demand equally serious proofs. There is absolutely no evidence at all that the officers perjured themselves before the RITT.[8] And this case presents neither of the concerns that motivated the *Danner* court. The findings supporting Justice Fortunato's decision to suppress evidence are based exclusively on determinations of credibility, as he was at pains to make clear;[9] no one recanted any testimony provided to the RITT at the suppression hearing and the vast majority of factual details that came into evidence before the RITT did not change in Superior Court. Moreover, and in contradistinction to the facts in *Danner,* the evidence of misidentified street signs was not only available at the time of the RITT hearing

---

**8.** "Perjury," as defined by R.I. Gen. Laws § 11–33–1(a), requires a *"knowingly . . .* false material declaration . . . ." (emphasis supplied). In like manner, Plaintiff charges that the RITT decision was, "arguably, obtained by fraud on the court." Pl. Supp. Mem. at 4. Those who live in glass houses should not throw stones: if true, it is equally arguable that Plaintiff (through prior counsel) is responsible for that fraud, since he chose to withhold material facts from Judge Yashar.

**9.** *See* Def. Supp.App. Ex. K, at 218–19.

but was also well-known to Plaintiff and his counsel.

■ There is a stronger argument against issue preclusion that Plaintiff has not cultivated. Collateral estoppel may be inappropriate if a party lacked incentive to litigate an issue vigorously. *See Parklane Hosiery,* 439 U.S. at 330, 99 S.Ct. 645 (operation of collateral estoppel may be unfair if a party has little motivation to litigate). Wiggins knew that he faced felony prosecution in Superior Court; his overarching concern was with a vigorous defense to those charges; that defense might have been compromised had he "shown his hand" at the RITT. Plaintiff could have advanced a plausible argument that these rather unique circumstances render the operation of collateral estoppel unjust.

The argument ultimately fails, however, because "while lack of incentive to litigate vigorously may render the collateral estoppel doctrine inoperative, . . . lack of incentive to appeal does not have the same effect." *Pinkney v. Keane,* 920 F.2d 1090, 1096 (2d Cir.1990) (citations omitted). Plaintiff did not seek review of two RITT decisions (the initial determination and the refusal to vacate) in the Rhode Island Supreme Court, as is permitted by R.I. Gen. Laws § 31–41.1–9(h).[10] "[F]ailure to appeal an adverse judgment negates the preclusive effect of that judgment only when review was unobtainable 'as a matter of law.' Where review is available but is not sought, estoppel applies." *Pinkney,* 920 F.2d at 1096 (citation omitted). Plaintiff explains his failure to appeal in his affidavit dated May 5, 2004,[11] by claiming that he simply could not afford to file a writ of certiorari with the state Supreme Court. This, he contends, should suffice to invoke the Restatement section 28(5)(c) exception. The Court has not found (and the Plaintiff has not supplied) any case holding that one who has insufficient funds to appeal a decision of a lower court should be exempted from its preclusive effect.[12] Furthermore, there is nothing in Plaintiff's penury that renders the underlying RITT decision analytically infirm, or that compels a redetermination of the probable cause issue.

■ This Court will therefore accord issue preclusive effect to the RITT's probable cause determination.[13] But because the State is already immune from suit

**10.** "Estoppel applies regardless of whether review is available as a matter of right, or simply as a matter of the appellate court's discretion." *Pinkney,* 920 F.2d at 1096 n. 10.

**11.** Defendants move to strike this affidavit, as well as another filed by the Plaintiff on the same day stating that Plaintiff was not speeding on the night in question. As to Affidavit "B," the motion is denied because the Court specifically requested briefing on the effect of Plaintiff's failure to appeal the RITT decision to the Rhode Island Supreme Court. The motion to strike Affidavit "A" is rendered moot by the Court's decision on the preclusive effect of the RITT decision, as will become clear *infra.*

**12.** Plaintiff relies on *Lewis v. Int'l Business Machines Corp.,* 393 F.Supp. 305 (D.Or.1974), where the court refused to give preclusive effect to the determination of an Oregon administrative agency, on the grounds that plaintiff (1) was not represented by counsel at that proceeding, (2) failed to appear at portions of that proceeding, and (3) failed to appeal the administrative agency's decision. *Id.* at 308–09. Wiggins was represented before the RITT and, unlike the plaintiff Lewis, was well aware of his appellate rights (as made plain by his affidavit). *Lewis* is also inapposite because the court held that Lewis could not have foreseen that the agency decision would have been given issue preclusive effect; there is no reason to assume that the same could be said for the RITT decision.

**13.** The Court recognizes the oddity of granting preclusive effect to the RITT decision, since it directly conflicts with the findings of the Superior Court. This apparent paradox is resolved *infra* at section IV(B)(2).

under the holding of *Will v. Michigan*, the critical question becomes whether Officers Jones and Catlow, in either their official or individual capacities, may use collateral estoppel to defend against the section 1983 claim.

Both parties assert that *Bilida v. McCleod,* 211 F.3d 166 (1st Cir.2000) resolves the issue in their respective favors. Claire Bilida was prosecuted in state court for the misdemeanor offense of possessing a raccoon without a permit. *Id.* at 169. At an evidentiary hearing in that case, Bilida asserted that her Fourth Amendment rights were violated when officers of the Department of Environmental Management (DEM) entered onto, searched, and seized her property without a warrant. The state court judge agreed with Bilida. *Id.* Bilida then filed a section 1983 complaint in federal court, naming the State and the DEM officers (officially and individually), which the district court dismissed. On appeal, she argued that collateral estoppel required a finding that the search and seizure were illegal. The First Circuit disagreed:

> [N]one of the defendants other than the State of Rhode Island was a party to the criminal proceeding, and we doubt that a Rhode Island court would deem those individual defendants in privity with the state insofar as they are now being sued in their individual capacities.... [M]ost precedent indicates that individual state officials are not bound, in their individual capacities, by determinations adverse to the state in prior criminal cases.

*Id.* at 170. In *Bilida,* therefore, the court rejected the plaintiff's argument for offensive, non-mutual[14] collateral estoppel because the parties *against whom* collateral estoppel would have been asserted, the DEM officers, had not been parties (or their privies) to the state action. In this case, Wiggins is the party against whom collateral estoppel would apply; and he, of course, was a party to the RITT proceeding. Since mutuality of parties is not essential to a collateral estoppel *defense* under Rhode Island law, *DiPinto v. Sperling,* 9 F.3d 2, 4 (1st Cir.1993), the officers may deploy defensive, non-mutual collateral estoppel to bar Plaintiff from relitigating the issue of probable cause decided against him by the RITT. *See Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found.,* 402 U.S. 313, 329, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) ("Permitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or 'a lack of discipline and of disinterestedness on the part of the lower courts, hardly a worthy or wise basis for fashioning rules of procedure.' ") (citation omitted). In consequence, the RITT decision collaterally estops Plaintiff from relitigating the issue of probable cause for the car stop in his case against the Officers.

### 2. The Superior Court Decision

■ The Superior Court's contrary probable cause determination still must be confronted. Plaintiff draws on the same principles expressed above in support of his argument that since Defendants failed to appeal the Superior Court finding, they are collaterally estopped from relitigating that issue in this Court.

---

**14.** "Mutuality of estoppel" is the somewhat anachronistic doctrine "which ordained that 'unless both parties (or their privies) in a second action are bound by a judgment in a previous case, neither party (nor his privy) in the second action may use the prior judgment as determinative of an issue in a second action.' " *Acevedo–Garcia v. Monroig,* 351 F.3d 547, 573 (1st Cir.2003) (citing *Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found.,* 402 U.S. 313, 320–21, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971)).

But there are salient differences, for collateral estoppel purposes, between the two state court determinations. First, giving collateral estoppel effect to the Superior Court finding directly conflicts with the holding in *Bilida*. *See Bilida*, 211 F.3d at 170 (DEM officers were not bound in federal action by previous, state court decision adverse to the State, to which they were not parties).[15] Second, the application of offensive, non-mutual collateral estoppel is always more problematic, from an equitable viewpoint, than that of its defensive cousin. *See Acevedo–Garcia*, 351 F.3d at 573 (offensive, non-mutual collateral estoppel "historically spawned the greatest misgivings among jurists").[16] One of the primary reasons for caution is that "[a]llowing offensive collateral estoppel may ... be unfair to a defendant if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant." *Parklane Hosiery*, 439 U.S. at 330, 99 S.Ct. 645 (footnote omitted). Where, as here, there are opposing findings on the issue of probable cause to stop Wiggins' car—one favoring Plaintiff and the other favoring the State—it would be inequitable to hold that the Officers are bound solely by the finding that harms their defense in this case. Third, collateral estoppel is inappropriate when

[t]he party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action[.]

Restatement of Judgments (Second) § 28(4). While the State bore the burden of persuasion at the suppression motion before the Superior Court, the burden has now shifted to the Plaintiff to establish, by a preponderance of the evidence, that there was no probable cause to stop his car. The Superior Court's finding that the State had not met its burden consequently does not preclude the Officers from arguing that Plaintiff cannot meet his. *See Cobb v. Pozzi*, 363 F.3d 89, 113 (2d Cir. 2004) ("Courts and commentators alike have recognized that a shift or change in the burden of proof can render the issues in two different proceedings non-identical, and thereby make collateral estoppel inappropriate."); 18 C. Wright, A. Miller, and E. Cooper, *Federal Practice & Procedure* § 4422 at 592 (2002) ("Failure of one party to carry the burden of persuasion on an issue should not establish the issue in favor of an adversary who otherwise would have the burden of persuasion on that issue in later litigation.").

15. *Bilida* also raises the question of whether a probable cause determination is a "final judgment": "Whether a final judgment exists might be debated since we are dealing with an intermediate ruling that led simply to an abandonment of the prosecution, but Rhode Island may not be rigid as to this requirement[.]" *Id.* at 170 (citations omitted). Since this Court, like the *Bilida* court, disposes of the case on other grounds, it takes no position on this question.

16. In fact, it is not clear to this Court that Rhode Island recognizes offensive, non-mutual collateral estoppel at all. Rhode Island's

rule is that the party against whom collateral estoppel is asserted must have been a party (or in privity with a party) to the first action. Strictly speaking, therefore, a plaintiff in "Action B" could never seek to preclude a defendant in "Action B" from relitigating an issue decided in favor of the same plaintiff in "Action A" to which that defendant was not a party. Nevertheless, the Court will assume that Rhode Island does condone offensive, non-mutual collateral estoppel in certain circumstances in order to demonstrate that it is inappropriate (as well as, perhaps, unavailable) in this case.

For all of these reasons, this Court will not accord issue preclusive effect to the Superior Court's determination of the probable cause question. The Court now turns to the alleged constitutional deprivations.

### C. *Violations of the Fourth Amendment and the Qualified Immunity Defense*

Plaintiff does not specify in his Complaint what specific actions he claims are Fourth Amendment violations [17] (or he believes that everything the Officers did violated the Fourth Amendment). In either case, the Court is left to parse the Complaint on its own. The Court has conceived of six factual allegations that could, if proven, constitute unreasonable searches and seizures, and it assumes that Plaintiff means to press all of them: (1) the stop of Wiggins' car; (2) the search of Wiggins after he was stopped by the Officers; (3) the physical altercation between Wiggins and the Officers; (4) Wiggins' arrest; (5) the search of Wiggins' car; and (6) the strip-search of Wiggins at the barracks after his arrest. The first contention is not actionable because the Court has held that there was reasonable suspicion to stop Wiggins' car based on the RITT's findings that Wiggins had not stopped at three stop signs. This leaves the latter five contentions; Defendants (namely, the Officers) assert, as to each of these, the defense of qualified immunity. [18]

A court evaluating a claim of qualified immunity must first determine whether a plaintiff has alleged a deprivation of a constitutional or federal right by a defendant official. *See Abreu–Guzman v. Ford*, 241 F.3d 69, 73 (1st Cir.2001). If so, the court must next "determine whether that right was clearly established at the time of the [official's] alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (citing *Conn v. Gabbert*, 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999)) (internal quotation marks omitted).

"Only after both of these questions are answered affirmatively should the court address 'the particular conduct in question,' *Abreu–Guzman*, 241 F.3d at 73, to decide whether an objectively reasonable official would have believed that his conduct was lawful 'in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct.'" *Kelley v. LaForce*, 288 F.3d 1, 6 (1st Cir.2002) (citing *McBride v. Taylor*, 924 F.2d 386, 389 (1st Cir.1991)). Keeping these principles in mind, the Court assesses the remaining putative Fourth Amendment violations.

▪ After they stopped Wiggins' car, the Officers ordered Wiggins out of his car and patted him down. Following the qualified immunity praxis, the Court first must determine whether these are alleged constitutional deprivations. It is no violation that Officer Jones ordered Wiggins to step out of his car because a law enforcement

---

**17.** Count VI of the Complaint, "Unreasonable Search and Seizure in Violation of 42 U.S.C. § 1983," states:

Defendants, acting under color of state law, by their individual and concerted acts and/or omissions, including but not limited to those described herein, caused Plaintiff to be illegally searched and seized in derogation of Plaintiff's constitutional right to be free from unreasonable searches, causing Plaintiff to sustain damages as afore-

said, and thereby deprived Plaintiff of rights secured under the Fourth and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. § 1983.

**18.** "Qualified immunity shields the [O]fficers only from damage suits," not from the declaratory relief Plaintiff seeks against them. *Bilida*, 211 F.3d at 175.

officer may, as a matter of course, order the driver of a lawfully stopped car to exit his vehicle. *Pennsylvania v. Mimms,* 434 U.S. 106, 111 n. 6, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977).

█ The Officers frisked Wiggins after he got out of his car. Reasonable suspicion of criminal activity is required to conduct a *Terry* frisk. *See Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Plaintiff therefore has alleged a constitutional deprivation of a clearly established right; the question is whether there are any genuine issues of material fact in dispute about whether a *Terry* frisk of Wiggins was objectively reasonable under the circumstances known to the Officers at the time.

This Court finds that there are such facts in dispute. The Court has held that the Officers observed that Plaintiff did not stop at three stop signs. For summary judgment purposes, therefore, that is an undisputed fact. When approaching Wiggins' car, the Officers claim that they observed that Wiggins looked over his shoulder toward them, reached down into the passenger side of the car, and rapidly moved his hand to his mouth. Wiggins contests all of these facts. Furthermore, when Wiggins was ordered to exit his car, Officer Jones claims that he smelled an overpowering odor of alcohol emanating from Wiggins and the car. Wiggins contests this as well.

In order to conclude that there was reasonable suspicion to frisk Wiggins (and, therefore, that the Officers acted in an objectively reasonable manner based on the facts known to them at the time), the Court would have to find facts or draw inferences in favor of the Officers and against Wiggins. This, of course, would run afoul of the summary judgment standard. *See Kelley,* 288 F.3d at 7 (objective reasonableness often requires an "exami-

nation of the information possessed" by the defendant officials at the time) (citations omitted). Moreover, though the contexts in which reasonable suspicion may arise are many, *see Swain v. Spinney,* 117 F.3d 1, 9 (1st Cir.1997), "in cases arising under the Fourth Amendment's reasonableness standard the applicability of qualified immunity will often turn on the resolution of contested factual issues." *Fisher v. City of Memphis,* 234 F.3d 312, 317 (6th Cir.2000). Here, there are contested issues of material fact as to the existence of reasonable suspicion to frisk Wiggins that must await the finder of fact before this Court can address the question of qualified immunity. *See Ringuette v. City of Fall River,* 146 F.3d 1, 6 (1st Cir.1998) ("Something of a 'black hole' exists in the law as to how to resolve factual disputes pertaining to qualified immunity when they cannot be resolved on summary judgment prior to trial. To avoid duplication, judges have sometimes deferred a decision until the trial testimony was in or even submitted the factual issues to the jury.") (citation omitted); *Kelley,* 288 F.3d at 7 n. 2 ("We have previously noted that the Supreme Court has not clearly indicated whether the judge may act as fact-finder when there is a factual dispute underlying the qualified immunity defense or whether this function must be fulfilled by a jury...." In any event, when facts are in dispute, "'we doubt the Supreme Court intended this dispute to be resolved from the bench by fiat.'") (citations omitted).

█ The next alleged Fourth Amendment violation was the unreasonable force Wiggins claims that the Officers used against him. Plaintiff alleges (and has testified in his deposition) that after he was stopped by the Officers, frisked, and asked what was in his mouth, the Officers beat him without provocation. The Officers and their supporting witnesses claim

that Wiggins' wild behavior and flailing limbs required that he be subdued.

Once again, the qualified immunity question comes down to a contested issue of material fact as to the Officers' objective reasonableness under the circumstances. It would be clear to a law enforcement officer that the use of physical force in the context set forth by Wiggins (i.e., beating an individual without justification) would have violated Wiggins' well-established constitutional rights. Likewise, if the scenario set forth by the Officers is accepted, it might be equally clear that the use of force was objectively reasonable.

The First Circuit has stated that in the context of an excessive force claim against the police, the defense of qualified immunity is "concerned ... not with proof of raw facts but whether, *on known or assumed facts,* police behavior can be deemed egregious enough to submit the matter to a jury." *Roy v. Inhabitants of City of Lewiston,* 42 F.3d 691, 696 (1st Cir.1994) (emphasis supplied). Since the facts that gave rise to the altercation are neither known to this Court nor (at this procedural stage) can be assumed not to reflect Plaintiff's view, the Court must defer the resolution of the Officers' assertion of the qualified immunity defense as to the claim of excessive force. *See Saucier v. Katz,* 533 U.S. 194, 216, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (whether the officers were reasonable "turns on which of two conflicting stories best captures what happened on the street") (Ginsburg, J., concurring in the judgment).

The same is true for Wiggins' arrest, the search of his car, and his strip-search at the barracks. All of these are viable allegations of well-established Fourth Amendment violations. And all of them involve hotly disputed factual claims. If Plaintiff's version of the events is accepted, it would have been entirely unreasonable for the Officers to arrest him, since no reasonable officer could have concluded that he had committed any crime. Likewise, if the Officers are not immune from suit as to Wiggins' arrest, it would not have been reasonable for them to search Wiggins' car, or to strip-search him at the barracks. Conversely, if the Officers' testimony is countenanced, the arrest, car search, and strip-search may have been eminently reasonable under the circumstances, and would entitle the Officers to qualified immunity. Summary judgment as to all but the validity of the initial stop of the car (and the refusal of the Plaintiff to take the breathalyzer test) must therefore be denied at this juncture.

### D. *42 U.S.C. § 1981*

■ This statute, as amended in 1991, reads:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishments, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). The "equal benefit" and "like punishment" clauses of section 1981 proscribe the misuse of governmental power motivated by racial animus. *Alexis v. McDonald's Restaurants of Massachusetts, Inc.,* 67 F.3d 341, 348 (1st Cir.1995). To state a section 1981 violation, a plaintiff must allege (1) that he is a member of a racial minority, (2) that the defendant discriminated against him on the basis of his race, and (3) that the discrimination implicated one or more of the activities enumerated in the statute. *Garrett v. Tandy Corp.,* 295 F.3d 94, 98 (1st Cir.2002).

Defendants contend that Plaintiff has failed to produce any evidence that would satisfy the second element—intentional racial discrimination. This Court agrees. Plaintiff's factual proffer on the issue of the Officers' intent to discriminate against him consists of the following: the Officers "provid[ed] false testimony to the RITT, complet[ed] reports and tickets with false information, [did not] stop the Plaintiff after witnessing the first alleged traffic infraction," and motley other criticisms of the testimony given by the Officers in the two state court tribunals and at their depositions.[19] Pl. Opp. S.J. at 18. None of these allegations directly or indirectly reflects an intent to discriminate against Wiggins. Most relate to the circumstances of the stop of Wiggins' car, which the Court has determined was legal. In any event, none raises any inference of racial animus in the decision to stop, search, forcibly restrain, or arrest Wiggins. *See Johnson v. Crooks*, 326 F.3d 995, 1000 (8th Cir.2003) (black plaintiff who claimed that white officer was in a good position to see her race from his car, and that officer did not immediately pull her car over when she broke the law, did not sufficiently establish that officer's racial animus motivated the arrest); *McKenzie v. City of Milpitas*, 738 F.Supp. 1293, 1301 (N.D.Cal.1990)

(where the only evidence was that plaintiffs were black and that the police officers "immediately resorted to the use of force in a situation whose objective context did not call for this force," plaintiffs' conjecture of racially discriminatory intent could not support their section 1981 claim); *cf. Alexis*, 67 F.3d at 348 (officer's statement to black plaintiffs, "You people have no rights. You better shut up your [expletive] mouth before I arrest you too," gave rise to an inference of racial animus making summary judgment inappropriate). Plaintiff's claim that various inconsistencies in the Officers' testimony can form a basis for finding racial animus is untenable.[20] Given the absence of any meaningful evidence of discriminatory intent, summary judgment is appropriate as to this cause of action.

### E. *The State Law Claims*

Plaintiff sets forth six state law claims: assault, battery, false arrest, malicious prosecution, violation of the right to privacy, and negligence.[21] The Court addresses each in turn.

#### 1. *Assault and Battery*

■ Though in Rhode Island "[a]ssault and battery are separate acts, usually aris-

**19.** Particularly suggestive of an irradicable racial animus, Plaintiff believes, are several tracts of Officer Jones' deposition testimony. When asked by Plaintiff's counsel whether the neighborhood in which the incident occurred was "racially diverse" or "predominantly Caucasian," Officer Jones apparently responded, respectively, that he had not made a determination about the neighborhood's diversity and that he had not "seen all the people[,] sir." Pl. Opp. S.J. at 18 n. 12. Just how this testimony is suggestive of racial animus escapes the Court's understanding.

**20.** The Court notes that Justice Fortunato, in his decision on Wiggins' motion to suppress, made the following comments about the circumstances attending the car stop: "You can

certainly tell the race of the person driving the car. In this case, as is obvious to everyone in the courtroom, Mr. Wiggins is a dark-complected Afro–American individual." Def. Supp.App. Ex. K, at 221–22. Whatever Justice Fortunato's personal feelings about the racist overtones of the car stop may be, they (like Plaintiff's own conjectures) are not evidence of racial animus and are therefore irrelevant in determining the viability of the section 1981 claim.

**21.** The Count for violation of the Rhode Island Constitution survives for the same reason that Plaintiff's federal Fourth Amendment claims survive.

ing from the same transaction, each having independent significance," *Hennessey v. Pyne*, 694 A.2d 691, 695–96 (R.I.1997) (citation omitted), the Court will analyze them together for the sake of expediency. An assault is a threatening physical act or an "offer of corporal injury" that puts an individual in reasonable fear of imminent bodily harm. *Id.* at 696. A battery is "an act that was intended to cause, and in fact did cause, 'an offensive contact with or unconsented touching of or trauma upon the body of another, thereby generally resulting in the consummation of the assault.' " *Id.* (citation omitted).

For the reasons discussed earlier, there are material facts in dispute that render these causes of action inappropriate for summary judgment at this juncture, both with respect to the qualified immunity defense and the merits of the claims.

### 2. False Arrest

To prevail on his false arrest claim, Plaintiff must demonstrate that he was detained without legal justification, that is, without probable cause. *Winn v. Collins*, 723 A.2d 798 (R.I.1998). This Count survives as well, since, at this point, there are sundry disputed facts about whether probable cause existed to arrest and detain the Plaintiff and whether qualified immunity shields the Officers from suit.

### 3. Malicious Prosecution

"Rhode Island requires a plaintiff to prove four elements in order to recover damages for malicious prosecution: (1) the defendants initiated a prior criminal proceeding against him; (2) there was a lack of probable cause to initiate such a proceeding; (3) the prior proceeding was instituted maliciously; and (4) the proceeding terminated in the plaintiff's favor." *Ousley v. Town of Lincoln*, 313 F.Supp.2d 78, 87 (D.R.I.2004) (citations omitted).

The elements of malice and lack of probable cause must be established by "clear proof." *Id.* Like the prior state claims, summary judgment as to the malicious prosecution claim is not appropriate now because Plaintiff satisfies the first and fourth elements and there remain material issues of fact as to the second and third elements.

### 4. Right to Privacy

R.I. Gen. Laws § 9–1–28.1 created four statutory privacy rights, only the first of which is at issue here:

(1) The right to be secure from unreasonable intrusion upon one's physical solitude or seclusion;

(i) In order to recover for violation of this right, it must be established that:

(A) It was an invasion of something that is entitled to be private or would be expected to be private;

(B) The invasion was or is offensive or objectionable to a reasonable man; although,

(ii) The person who discloses the information need not benefit from the disclosure.

R.I. Gen. Laws § 9–1–28.1(a)(1). The Rhode Island Supreme Court has held that one's "physical solitude or seclusion" does not encompass any activity occurring outside the home. *See Swerdlick v. Koch*, 721 A.2d 849, 857 (R.I.1998). This incident, which occurred on a public street in a place visible to the public, is outside the statute's scope. *Id.* Summary judgment is therefore warranted on this claim.

### 5. Negligence

Rhode Island's formulation of the negligence standard is familiar: "a plaintiff must establish a legally cognizable duty owed by a defendant to a plaintiff, breach of that duty, proximate causation

between the conduct and the resulting injury, and the actual loss or damage." *Mills v. State Sales, Inc.*, 824 A.2d 461, 467 (R.I.2003) (citing *Jenard v. Halpin*, 567 A.2d 368, 370 (R.I.1989)). Since there remain facts in dispute about whether the Officers breached a duty of care to the Plaintiff (and, even if they did, whether they are protected by qualified immunity), this claim is not amenable to summary judgment at this stage. Likewise, Plaintiff's *respondeat superior* theory of negligence against the State survives summary judgment, subject to the damages cap of $100,000 set forth at R.I. Gen. Laws § 9–31–2.

### IV. *Conclusion*

For the foregoing reasons, the Court grants summary judgment in part and denies it in part.

As to Defendant the State of Rhode Island, summary judgment is GRANTED on all Counts except Count I ("Negligence"). Summary judgment is DENIED on Count I.

As to Defendants Jones and Catlow, summary judgment is also GRANTED on:

A. The issue of Officers Jones' and Catlow's probable cause to stop Wiggins' car;

B. Count VIII ("Rhode Island Privacy Act"); and

C. Count IX ("Deprivation of Civil Rights in Violation of 42 U.S.C. § 1981").

Summary judgment as to Defendants Jones and Catlow is DENIED as to Counts I, II, III, IV, V, VI, and VII.

IT IS SO ORDERED.